Per Curiam:
This case was referred to Trial Commissioner Saul Bichard Gamer with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on August 24, 1965. Exceptions to the commissioner’s report and opinion were filed by plaintiff, and the case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, it hereby adopts the same as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is therefore not entitled to recover and the petition is dismissed.
*1197 OPINION OE COMMISSIONER*
Gamer, Commissioner:
Plaintiff was dismissed from the Foreign Claims Settlement Commission for alleged unsatisfactory performance of her duties. She contests the dismissal on various grounds, and claims hack salary from the date she was removed from the payroll.
At the time of her discharge on July 21, 1961, plaintiff had held the position of Personnel Assistant for approximately seven months, having been appointed thereto on January 8, 1961. The agency considered 'her to be serving the required one-year probationary period applicable to career civil service appointments, and accordingly utilized the quite summary termination procedure applicable to probationary employees. This amounted to furnishing plaintiff with a letter which in effect simply gave notice that her appointment would be terminated because of the agency’s conclusion that she had not performed competently.
Plaintiff contends, however, that the agency erred in treating her as a probationary employee. She says that the nature of her one-year service in the same agency just prior to her appointment 'as Personnel Assistant was such as to fulfill the requirements of a probationary period. On this “same line of work” basis she was, she contends, a permanent civil service employee when discharged, entitled to all the termination procedures applicable thereto, including notice of intent to dismiss, specific charges, and opportunity to reply. Plaintiff alleges that in truth political considerations motivated the agency to act as it did, and not an honest belief that she was incompetent. A new national administration had just come in and a new Commission Chairman appointed. Prior to her appointment as Personnel Assistant, plaintiff had served as a Confidential Assistant to the prior Chairman. Plaintiff charges that the new Chairman did not wish to be saddled with a personnel officer who had had such a close and confidential relationship with the previous Chairman. *1198 Thus, she says, an arbitrary and capricious removal based upon political considerations was effected under the guise of dismissing a probationary employee for incompetence.
Promptly upon her discharge — in fact the very next day— plaintiff appealed to the Civil Service Commission. After detailed presentations to it, that agency, by two decisions of its Appeals Examining Office and of its Board of Appeals and Review, as well as a consideration by the Civil Service Commissioners themselves of the politics charge, denied plaintiff’s appeal. It held (after rejecting certain other contentions not here pressed) that the work plaintiff 'had actually performed as a Confidential Assistant to the Chairman was not in the “same line of work” as that of a Personnel Assistant and could not, therefore, properly be counted as satisfying the probationary period attaching to the latter appointment. It consequently concluded that the agency did not err in treating plaintiff as a probationary employee and applying the dismissal procedure applicable thereto. It further held that plaintiff had failed to sustain her charges that political considerations motivated her removal. As a probationary, the Commission would not review the agency’s determination that plaintiff had not satisfactorily performed her duties as a Personnel Assistant.
After a full trial and a detailed consideration of plaintiff’s serious charges in light of all the evidence presented, it must be concluded that plaintiff has failed to sustain the heavy burden of proof cast on her in cases of this kind. Knotts v. United States, 128 Ct. Cl. 489, 121 F. Supp. 630 (1954).
The basic postulate is that, in the absence of unlawful or arbitrary action by the Civil Service Commission, the agency designated by Congress to regulate and supervise the operations of the Federal Civil Service system (5 U.S.C. § 633 (1958 ed.)), this court will not undertake to substitute its judgment for the Commission’s. Lawyer v. United States, 147 Ct. Cl. 501, 504 (1959), cert. denied, 362 U.S. 977, reh. denied, 363 U.S. 858 (1960) ; Barnes v. United States, 170 Ct. Cl. 639, 643-4 (1965). The Civil Service Commission is the agency in whom has been vested the responsibility of making determinations concerning allegedly politically *1199 motivated dismissals of Government employees. 5 XJ.S.C. § 633 (2) 5 and 6 (1958 ed.) ; 26 Fed. Reg. 181-182. Only upon a clear showing of arbitrariness or capriciousness can a decision of the Commission in this area be upset. Hoppe v. United States, 136 Ct. Cl. 559 (1956), cert. denied, 355 U.S. 816 (1957) ; Saggau v. Young, 240 F. 2d 865 (D.C. Cir. 1956). The proof herein falls far short of such requisite. Plaintiff’s case rests essentially upon alleged statements made by the Foreign Claims Settlement Commission’s new Chairman that he did not wish the Confidential Assistant to his predecessor to be his personnel officer. These alleged statements were vigorously denied before the Civil Service Commission, which rejected plaintiff’s version of the matter, as well as personally before this court, and a review of the total situation does not warrant the conclusion, based upon compelled inference, that plaintiff’s version must necessarily be accepted.
Plaintiff’s position was not that of an important, policy-making, personnel official. Cf. Hoppe v. United States, supra. It was the Executive Director (in this case also a holdover from the previous administration) who was the agency’s highest personnel official. Plaintiff was merely his assistant. She was in the relatively modest grades of GS-7 at the time of her appointment as a personnel assistant, and GS-9 at the time of her dismissal. And it was the holdover Executive Director, and not the new Chairman, who initiated the removal procedure against plaintiff because of alleged incompetence and who advised the new Chairman of his low opinion of plaintiff’s job performance before the Chairman ever heard of or met plaintiff. Indeed, his dissatisfaction with plaintiff’s services was not a new manifestation with the change in administration. He had expressed it to the former Chairman too.
Plaintiff’s initial appeal to the Civil Service Commission’s Appeals Examining Office did not even allege politics as a basis for her dismissal. It was only upon appeal to the Commission’s Board of Appeals and Review that it was first mentioned. As a result, the case was returned to the Appeals Examining Office for special consideration of this charge, and evidence with respect thereto was then submitted both by *1200 plaintiff and the agency. The ultimate decision was made by the Commissioners of the Civil Service Commission themselves.
Similarly, the Civil Service Commission’s determination that plaintiff’s previous “line of work” as Confidential Assistant to the Chairman did not serve to satisfy her probationary period as Personnel Assistant is not only not shown to have been arbitrarily arrived at, but, as the further evidence in this court made plain, was in fact clearly correct.[1] The amount of personnel work as such which plaintiff performed while serving as Confidential Assistant was minimal. At most, it certainly did not constitute, on any substantially full-time basis, personnel work of the kind that plaintiff was supposed to perform as Personnel Assistant. Instead, plaintiff essentially acted as the secretary to the Administrative Officer, in whom was then vested the agency’s personnel duties. It is true that as such secretary, she did at times type personnel forms. But this is hardly the performance of personnel duties. During this period plaintiff, in her capacity as Confidential Assistant, also admittedly performed services for the Chairman of a non-personnel nature. Even though she may be considered to have performed some personnel work during this period, the Civil Service Commission clearly was not arbitrary in concluding it was insufficient to satisfy the “same line of work” requirement.
Plaintiff says that during the year she was assigned to the Administrative Officer, she attended, in May 1960, at the Ooanmission’s expense, a conference of the Society for Per *1201 sonnel Administration. She argues that this proves that at least from that date on she was in fact engaged in personnel work, so that even if the full year cannot be counted, the period after May 1960 should be, 'with plaintiff therefore attaining the Status of a permanent employee in May 1961, which was prior to her discharge.
The contention canniot be accepted. It is not understood how mere attendance at a conference must be deemed automatically to signal the performance of personnel work thereafter on a substantially full-time basis. The record fails to indicate that plaintiff’s conference attendance heralded any marked change in the type of work plaintiff continuously performed. Furthermore, tins contention was not even raised before the Civil Service Commission. Plaintiff is, therefore, under familiar principles relating to the doctrine of exhaustion of administrative remedies, precluded from raising it here. Long v. United States, 148 Ct. Cl. 4 (1960) ; Dixon v. United States, 122 Ct. Cl. 332, 336-7 (1952).
Plaintiff further says that in any event, the former Chairman who appointed her to the position of Personnel Assistant made the determination that her duties as Confidential Assistant were in the “same line of work”, that such performance was intended by the Chairman to count toward the satisfaction of the probationary period, that no one was in a better position than the Chairman to know what her own Confidential Assistant was doing, that such Confidential Assistant’s position was in the “301” series of civil service job classifications, a broad catch-all type of administrative classification which admittedly could encompass the performance of personnel duties, and that the former Chairman’s decision in the matter is in effect final and not subject to review by the Civil Service Commission.
The contention is neither satisfactorily proved factually nor, in any event, acceptable as a matter of law. The issue as to what the former Chairman intended subsequently arose as an incident to a question first raised by the Executive Director in April 1961 as to why the Personnel Action form effecting plaintiff’s appointment as Personnel Assistant bore no indication whatsoever concerning what plaintiff’s proba *1202 tionary status was. Plaintiff’s then response was to the effect that her form, as well as two others, one being that of the Executive Director himself, were all in error since all three were in a probationary status, which the forms should have so indicated. Plaintiff had prepared the three forms in question. The Executive Director, however, after pointing out that he had long been in the classified civil service and had served his probationary period many years ago, instructed that appropriate corrective action be taken with respect to the other two records.
Thus, at this time no contention was made that plaintiff was not in a probationary status because the former Chairman had allegedly waived it due to plaintiff’s service as her Confidential Assistant, nor did the agency records reflect any such indication by the Chairman of such waiver. It was only some two months later, and after plaintiff became cognizant of the possibility of some adverse personnel action being taken against her, and after plaintiff’s inquiry to the Civil Service Commission had verified the permanent status of the Executive Director and, except for a possible application of the “same line of work” rule, the probationary status of plaintiff and the other employee (the former Administrative Assistant to the Chairman), that plaintiff, by a memorandum of June 9, 1961 to the Executive Director, took the position that the former Chairman had intended to waive the service by plaintiff of a probationary period on the “same line of work” basis. The former Chairman did not testify at the trial herein and, as stated, no contemporaneous record in the agency’s files reflects such intention. On the whole, the record does not warrant the finding which plaintiff proposes as to the former Chairman’s intent and upon which such strong reliance is placed.
In any event, the issue is not legally significant. What is important is not what the former Chairman intended, but what the nature of the work plaintiff actually performed was as compared with the work plaintiff was required to perform as a Personnel Assistant. The intention of the Chairman might conceivably be of some help to the Civil Service Commission in a close case. But here the evidence submitted to the Commission (which did contain statements *1203 of the former Chairman as to her 'alleged intention at the time she appointed plaintiff to the position) as well as the evidence before this court, falls far short of proving the similarity of the duties of the two positions. The Commission’s expertise in deciding questions relating to its own “series” of job classifications, and the proper categories in which work performance falls, must be recognized. The fact that plaintiff might even have done some personnel work as a Confidential Assistant is obviously insufficient. No statute or regulation has been pointed out which makes the head of an agency’s determination on the “same line of work” question final and unreviewable by the Commission. Indeed, the possible abuse to which such a rule could be subjected by an outgoing head of an agency in blanketing employees into permanent civil service status is obvious. The Civil Service Act specifically makes the rules and regulations promulgated by the Civil Service Commission binding upon the heads of agencies. 5 U.S.C. § 633 (1958 ed.); Simon v. United States, 113 Ct. Cl. 182, 191 (1949).
Thus, plaintiff was at the time of her discharge properly classified as a probationary.[2] The corrective action effected by the Executive Director himself some two months after he had first directed plaintiff to do so, and which plaintiff had failed to do, was therefore obviously a proper personnel action. Against this factual background, it plainly was not, as plaintiff charges, simply a step in an illegal scheme to deprive her retroactively of her attained permanent civil service status so that the summary dismissal procedure applicable to probationaries could then be applied.[3]
Finally, plaintiff argues that even as a probationary, she is still entitled to be protected against an arbitrary discharge grounded upon such extraneous considerations as personal animus, with which she charges the Executive Director. She *1204 says, quite rightly, that even a probationary can be dismissed only upon an honest work performance appraisal based upon a full and fair trial. Greenway v. United States, 163 Ct. Cl. 72 (1963) ; Powers v. United States, 169 Ct. Cl. 626 (1965) ; 5 C.F.R. § 9.103. And in support of her contention that the Executive Director, in recommending her dismissal, could not have so acted upon a sincere belief in her incompetence, plaintiff points to the fact that he had, while the former Chairman was still in office, recommended a grade promotion for plaintiff in her new position as Personnel Assistant, which he presumably would not have done if he really considered her work to be unsatisfactory.
However, the circumstances pertaining to plaintiff’s promotion after serving only three months in 'her new position of Personnel Assistant are not such as to indicate satisfaction by the Executive Director 'with her job performance. The promotion was initiated, and to all intents and purposes effected, by the former Chairman. Plaintiff’s promotion papers had been already prepared by plaintiff herself and signed as “approved” 'by the former Chairman when they were presented to the Executive Director for his execution as “recommending” the action. He protested at the time that he felt plaintiff’s performance was not satisfactory and did not warrant a promotion. But because he construed the situation to be such as practically amounting to a direction by the Chairman that he execute the form, and further because he felt that his signature was only a formality since the Chairman herself had in effect already accomplished the promotion anyway, or would do so, he too signed. Perhaps, feeling as he did, he should not have done so. But, under these circumstances, to effect a sort of estoppel against him to claim dissatisfaction with plaintiff’s services and thus to attribute his later expression of dissatisfaction with her services to the new Chairman as being so inconsistent as to amount to proof of something in the nature of personal animus, is not proper. The fact is that after a trial period of Some three months, the Executive Director concluded that plaintiff’s work 'as his Personnel Assistant was not satisfactory, and so informed both the f ormer and the new Chairman.
*1205 In any event, the dismissal itself, although initiated by the Executive Director, was actually effected by the Chairman. Thus, the attack against the Executive Director is in large part misdirected. Although the Chairman unquestionably relied heavily on his Executive Director’s recommendation, the ultimate decision was his own. The proof shows that he delayed a decision on the Executive Director’s initial recommendation until he himself personally investigated the matter, including conferences with plaintiff herself, and until he was satisfied that plaintiff had had a full and fair trial and that no other agency position was ¡open to her. And further, the Chairman specifically based his dismissal notice on his own conclusion formed only since he took office, so that events which took place prior thereto, such as the incidents relating to plaintiff’s promotion, are essentially irrelevant. And the three-month period between his assumption of office and the dismissal notice is certainly sufficient to constitute a “full and fair trial” period.
With respect to a probationary employee, the role which this court can play in reviewing the discharge is a very limited one at best. Bander v. United States, 141 Ct. Cl. 373, 158 F. Supp. 564, cert. denied, 358 U.S. 855 (1958) ; Nadelhaft v. United States, 132 Ct. Cl. 316, 131 F. Supp. 930 (1955) ; Powers v. United States, supra. The procedure prescribed for the dismissal of a probationary employee was here followed. Indeed, it exceeded the requirements of the regulations which merely called for the agency to set forth its “conclusions” relating to the employee’s work performance. Here the notice of the dismissal went further and set forth some specific incidents of alleged unsatisfactory work performance. These were not, as plaintiff incorrectly terms them, “charges” in the sense the term is employed in connection with the dismissal of employees with permanent civil service status, in whom is vested the right to reply.[4]
*1206 Plaintiff attacks these specifications on various grounds. Quite naturally and understandably, plaintiff vigorously contests the charge that she incompetently performed her duties. But as has been held many times, the courts cannot be drawn into the merits of controversies relating to competence. Judgments as to an employee’s qualifications or the satisfactory nature of his services must necessarily rest with the agencies and not with the courts.[5] All the courts can do in questions of this kind is 'to make certain the agency’s action represents honest judgment. There is a strong presumption that public officials act in good faith. Knotts v. United States, supra; Slavitt v. United States, 155 Ct. Cl. 606, 613 (1961), cert. denied, 370 U.S. 938 (1962). That others might have come to a different conclusion as to the nature of plaintiff’s services is irrelevant. Except hi certain limited and specified cases, such as alleged politically inspired removals, the Civil Service Commission itself will “not investigate or review the sufficiency of the reasons for removal, suspension, reassignment, or demotion of 'an employee.” 5 C.F.R. § 9.106 (a) (b). Thus, no finding as to plaintiff’s competence as such is made or is, strictly speaking, relevant. All that is relevant is that plaintiff1’s agency, honestly and in good faith, became dissatisfied with her work performance.
It should be noted, however, that even assuming the agency’s statement of specific incidents which plaintiff so vigorously attacks has any relevance or significance, more than one of them were in fact solidly grounded. Even as to an employee entitled to specific “charges,” tins would be sufficient. Brownell v. United States, 164 Ct. Cl. 406 (1964) ; Deviny v. Campbell, 194 F. 2d 876, 879 (D.C. Cir. 1952), cert. denied, 344 U.S. 826. That, as the dismissal letter stated, plaintiff did fail to prepare accurately certain Personnel Action forms, including her own, is evident. Her personnel records, as well as the other employees’, certainly should have properly reflected probationary status, whatever that status was. And, as the letter also stated, plaintiff’s continued failure, despite repeated admonitions, to bring the *1207 agency’s Federal Personnel Manual up-to-date and to maintain it in a current status, is conceded. That, on the eve of dismissal, plaintiff did belatedly bring the Manual up-to-date is immaterial.
Nor can it be concluded that these cited instances were essentially trivial errors or delinquencies which in themselves indicate a contrived purpose to get rid of plaintiff, or for which the harsh punishment of dismissal, with its concomitantly drastic adverse effect on an employee’s record, should not have been administered. Filling out personnel forms erroneously, and failing to keep the Manual up-to-date, do not appear to be trivial derelictions. In any event, such matters as the appropriate disciplinary action to be taken normally lie within the agency’s discretion. Harrington v. United States, 161 Ct. Cl. 432 (1963) ; De Nigris v. United States, 169 Ct. Cl. 619 (1965). It is of some significance, however, that the agency here did in fact malee an effort, though unsuccessful (due primarily to its relatively small size), to find for plaintiff another position on its staff.
For all of the above reasons, plaintiff’s petition should be dismissed.
Findings of Fact
1. From February 1, 1954 until August 2, 1957, plaintiff was employed by the Foreign Claims Settlement Commission (formerly the War Claims Commission) under an excepted appointment, at grade OS — 9, as Administrative Assistant to Commissioner Pearl Carter Pace. From August 19, 1957 to March 28, 1958, plaintiff was Personnel Director of H. P. Selman & Co., a depai’tment store in Louisville, Kentucky, when she resigned to return to the Washington, D.C. area. Plaintiff served a short-term appointment from June 2,1958 to June 6,1958, also at grade GS-9, as Confidential Assistant to the Chairman of the Commission. By this time, Commissioner Pace had become the Chairman. Except for the period from February 1, 1954 to September 11, 1955, plaintiff’s employment with the Commission during the above periods was in a Schedule C excepted position.
2. On January 5,1960, plaintiff was appointed Confidential Assistant to Chairman Pace, a Schedule C excepted position, *1208 in grade GS-9. The appointment was not to exceed 30 days. However, she was successively reappointed to the same position every 30 days until September 4,1960, when she received an unlimited excepted Schedule C appointment.
3. The position of Confidential Assistant to the Chairman was classified in civil service classification series “301”. The “301” classification is a broad “catch-all” one for administrative positions and which may include jobs dealing with personnel work.
4. During the period here involved the Commission had about 50 employees, a large percentage of whom were attorneys. From September 1959 to December 1960, the Commission had no personnel officer as such. The Administrative Officer, Julius Kleizo, was responsible for the personnel work, together with numerous other responsibilities, including the budget work.
5. Sometime after plaintiff was appointed Confidential Assistant, she was assigned to work with Kleizo in order to become familiar with the agency’s personnel work. Plaintiff was to be instructed by Kleizo in personnel work with a view to plaintiff’s ultimately becoming a Personnel Assistant. In addition plaintiff was to perform Kleizo’s general secretarial work. During this period, plaintiff also continued with her duties as Confidential Assistant for a part of her working time. However, while working with Kleizo, plaintiff for the most part actually performed personnel work of only a routine secretarial nature, such as typing the various personnel forms which Kleizo prepared.
6. During the period from February 1960 to December 1960, plaintiff did not have access to the Personnel Office containing the personnel records, the Federal Personnel Manual, or the classification standards. In December 1960 and early January 1961, plaintiff did, on an informal basis, perform certain personnel work while Kleizo was ill and out of the office. During the time Kleizo acted as the agency’s personnel officer, he was unable to maintain the personnel work in a completely current manner. The Federal Personnel Manual and other rules and regulations were not kept wholly current.
*1209 7. In May 1960, Chairman Pace had plaintiff attend a conference of the Society for Personnel Administration at the expense of the Commission. Kleizo did not attend this conference.
8. (a) Pursuant to her application of September 80,1960, plaintiff, on November 19, 1960, took a Civil Service Entrance Examination and was found to be qualified for appointment to the competitive service. She was reached for certification by the Civil Service Commission on January 4, 1961, for a career-conditional appointment for the position of Personnel Assistant at grade GS-7. A Request for Personnel Action, Standard Form 52, was prepared and signed by Commissioner Pace on January 5, 1961, which requested plaintiff’s “Conversion to Career Conditional Appointment” as Personnel Assistant, grade GS-7, in the Office of the Executive Director of the Commission. The request was also signed by Executive Director Edward Dawson, who had just entered on duty with the Commission the previous day, January 4, 1961. On that date plaintiff had prepared and processed the personnel papers for Dawson’s appointment as Executive Director. These steps were taken pursuant to the Commission’s plan to relieve Kleizo of his personnel duties, and to have the personnel work placed in charge of an Executive Director (Dawson), who would be aided in carrying out such duties by a Personnel Assistant (plaintiff).
(b) In the Executive Departments, Dawson had had seven years’ experience as a Management Engineer in the Department of the Navy and two years with the Office of Price Administration, where he served as Personnel Officer, Administrative Officer for the War Price and Ration Boards, and Congressional Liaison Officer.
9.On the same day the request was made, January 5,1961, a Notification of Personnel Action, Standard Form 50, was executed, which appointed plaintiff, on a career-conditional basis, to the position cf Personnel Assistant, effective January 8, 1961. The references in the form pertaining to the completion of a one-year probationary or trial period were left blank.
*1210 10. (a) The applicable Civil Service Commission Regulation (5 C.F.R. § 2.301) in effect at the time herein involved, provided in pertinent part:
Stjbpart C — Types op Appointment
§ 2.301 Career-conditional and career appointments.
(a) Oareer-eonditional appointment.
(1) * * *
(2) * * *
(3) An eligible given a career-conditional appointment shall be required to serve a probationary period of one year. Prior service which shall be counted toward completion of probation Shall be published in the Federal Personnel Manual. The agency shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his services during such period if he 'fails to demonstrate fully his qualifications for continued Federal employment. The employee shall 'automatically acquire a competitive status upon satisfactory completion of probation.
(b) The Federal Personnel Manual, Chapter S-2, pp. 18-19, effective at all times here pertinent, was as follows :
DETERMINING DATE OP COMPLETION OP PROBATIONARY Period
❖ *
*
COUNTING SERVICE TOWARD COMPLETION OF PROBATIONARY PERIOD
•J» í» ‡ $
Service Prior to Personnel Action Involving New Probationary Period. — All actual prior service which meets the requirement listed below shall be counted toward completion of a new probationary period in connection with career-conditional or career appointments and conversions. The prior service shall be counted regardless of whether it was under competitive appointment * * *, under excepted appointment, or as a “status quo” employee. However, service of employees whose positions in public or private enterprise are taken over by the Government is counted only from the date such positions are placed in the competitive service. Prior service which meets all of the following specifications shall be counted:
(a) It was rendered immediately preceding career or career-conditional appointment or conversion. The em *1211 ployee must have been on the rolls of the agency at the time of the career or career-conditional appointment or conversion * * *
(b) It was ha the same line of work and in the same agency as the position with respect to which the action is taken. All service to be counted must have been continuously in the same line of work; there must have been no interruption by official position change to another line of work.
(c) Not more than one break of less than 30 days has occurred in it. * * *
11. Upon becoming Personnel Assistant, plaintiff undertook the performance of the agency’s personnel work under the direct supervision of Executive Director Dawson. However, plaintiff was not authorized to sign any personnel forms or other papers. She merely prepared them for Dawson’s signature. During January-March 1961, plaintiff occupied an office adjacent to that occupied by Dawson. However, sometime in April 1961, plaintiff’s desk was transferred to the Personnel Office. Prior to that time, in order to gain access to the Personnel Office, plaintiff had to obtain the key to the office from Dawson. During this period, Dawson was generally not satisfied with the manner in which plaintiff was organizing the Personnel Office and spoke to plaintiff several times about what he considered to be deficiencies in her work performance. He was particularly dissatisfied with plaintiff’s failure to bring the Federal Personnel Manual up-to-date and to maintain it on a current basis.
12. On February 15, 1961, the President announced the nomination of Edward D. Ee as Chairman of the Commission.
13. It was Chairman Pace’s understanding that, where an employee had sustained a reduction in salary, as had plaintiff (from grade GS-9 to grade GrS-7), the employee was, after 90 days of satisfactory service in the lower grade, eligible for promotion back to the former, higher, salary. Chairman Pace felt that plaintiff’s GS-9 grade should be restored after such 90-day period. On March 24, 1961, Chairman Pace executed, in the space provided for the approval of such action, a “Request for Personnel Action” for the promotion of plaintiff from GS-7 to GS-9, and requested Dawson *1212 to execute the form in the space provided by the officer initiating the request, explaining that she had checked with the Civil Service Commission and that plaintiff was qualified for a promotion after serving 90 days in the new position. The form itself had ’been prepared by plaintiff. Dawson informed Chairman Pace that he did not feel the promotion action was warranted since plaintiff had not carried out satisfactorily his instructions concerning the proper organization of the Personnel Office. However, Chairman Pace indicated that she wished plaintiff to be promoted and that she was satisfied plaintiff was eligible for such a promotion. Dawson concluded that in effect he was being directed to execute the form and that in any event, it made no difference whether or not he signed since the promotion could be effected by the Chairman without his signature. Accordingly, he complied with the Chairman’s wishes and executed the form. The “Request”, as prepared by plaintiff, contained no reference to a probationary period. The effective date of the promotion was to be April 9, 1961, 90 days after plaintiff had become the Personnel Assistant. Similarly, the “Notification of Personnel Action” executed by the Chairman the same day and effecting the promotion also contained no reference to a probationary period.
14. On March 29,1961, Edward D. Re replaced Mrs. Pace as Chairman of the Commission.
15. (a) Sometime in April 1961, it came to Dawson’s attention that the personnel forms of both plaintiff and another employee of the Commission, a Mrs. Elizabeth Backus, did not indicate that their new career-conditional appointments were subject to the completion of a one-year probationary period. At the same time that plaintiff took the Federal Service Entrance Examination (November 19, 1960), Mrs. Backus, who was then the Administrative Assistant to Chairman Pace, also a Schedule C position, took an examination and similarly qualified for a career appointment. Chairman Pace thereafter executed a Personnel Action form giving Mrs. Backus a conversion to a career-conditional appointment from Administrative Assistant to the Chairman to Records Management Technician. As in the case of plaintiff’s conversion to a career-conditional appointment, the Per *1213 sonnel Action form giving Mrs. Backus a conversion to a career-conditional appointment did not indicate that the appointment was subject to the completion of a one-year probationary period. Similarly, in March 1961, Chairman Pace caused Mrs. Backus to be promoted, effective 90 days after her conversion to the career-conditional position.
Upon inquiry of plaintiff as to why such personnel forms did not contain any probationary indication, plaintiff responded that the forms were in error, as was also Dawson’s form (all three of which plaintiff had prepared), since the appointments of all three were subject to the service of one-year probationary periods, which plaintiff stated should have been noted on the forms. Dawson responded that plaintiff was mistaken concerning his situation, since he had completed his probationary period many years ago in connection with his prior Federal service. However, plaintiff posed the question as to whether such prior service would serve to fulfill the requirements for his new position.
Dawson then instructed plaintiff to prepare corrective actions to indicate that at least both plaintiff and Mrs. Backus were serving probationary periods.
(b) Subsequently, plaintiff concluded that there was a question concerning whether she would in fact be required to serve a probationary period because of the possibility that her work as Confidential Assistant to the Chairman could be treated as satisfying the requirements for the service of such a period. Plaintiff felt that the work she had done with Kleizo might be treated as the performance of personnel work, thus satisfying the requirements of the Federal Personnel Manual that prior service could count toward the probationary period if it was “in the same line of work.” For the time being, therefore, and until she could check further with the Civil Service Commission, she decided to make no changes on any of the personnel forms discussed. She planned at the same time to check with the Commission on Dawson’s and Mrs. Backus’ situations also.
16. Plaintiff was concerned about Dawson’s attitude toward her work performance as Personnel Assistant. In view thereof, and of the change that had taken place in the Chairman’s position, as well as the discussion she had had with *1214 Dawson concerning her status as a probationary employee, plaintiff became fearful about her being retained by the Commission. Consequently, plaintiff contacted Senator Cooper of Kentucky with the request that he make representations to Chairman Ee in her behalf.
17. By letter dated May 8,1961, to Chairman Ee, Senator Cooper requested that plaintiff be retained at the Commission, if possible, either as Personnel Assistant or in some other position. Chairman Ee had had no previous contact with the Senator, nor had he, prior to May 8, 1961, any discussions at all with plaintiff.
18. Chairman Ee had been informed by Dawson that, in Dawson’s opinion, his Personnel Assistant was not performing her duties in a satisfactory manner. Dawson was dissatisfied 'with plaintiff because, in his opinion, she neither followed his instructions nor was amenable to suggestion or criticism. Further, he concluded that she had given misinformation on personnel matters to Commission employees, some of whom had complained to Dawson about such allegedly erroneous information. In addition, he found it difficult to discuss personnel matters with plaintiff because of what he felt was her demeanor and attitude. He was, furthermore, disturbed about what he felt was her failure to organize the Personnel Office properly and, particularly, to bring the Federal Personnel Manual up-to-date and to maintain it in a current condition. However, the Chairman, prior to the receipt of the Senator’s letter, had not concerned himself personally with the matter of plaintiff’s employment. Following receipt of the letter, however, the Chairman requested a report from Dawson.
19. By memorandum dated May 22,1961, Dawson advised the Chairman that in his opinion plaintiff “is not qualified as a personnel technician and has made no effort to learn anything about public personnel administration.” He stated plaintiff had, “a number of times, given misinformation to employees in this Commission and also to employees in other agencies and she has not been as cooperative with employees of this Commission as she should have been.” He recommended that the Chairman should advise plaintiff either that she would be demoted to grade G8-7 and reassigned to *1215 other work, or that she be terminated. He advised that in the latter event, because of her career-conditional status, all that was necessary was a statement to the employee of dissatisfaction with her performance and from which action “[Tjhere is no appeal * *
Prior to this time, Dawson had not informed plaintiff that he was recommending her demotion or discharge.
20. The following day, May 23, 1961, Chairman Ee discussed with plaintiff her situation. He informed her that Dawson was not satisfied with her work as Personnel Assistant. Among other things, they discussed her failure to make proper notations on the personnel forms concerning the service of probationary periods and her failure to date, despite Dawson’s instructions in April, to take appropriate corrective steps. Plaintiff stated she felt there was some question about her proper status due to the nature of the previous work she had performed, but Chairman Ee stated that this would not excuse her failure to make proper notations on Mrs. Backus’ forms, since there seemed to be no “same line of work” question in her case. Plaintiff replied that in her opinion the entire matter of these notations on the forms were of relatively minor importance and 'at most involved only clerical errors since an employee’s status was determined by his actual situation and not by notations on forms. The talk ended without any final determination by Chairman Ee as to what to do about plaintiff. He wanted to make further inquiry about whether plaintiff had had a fair trial in her new job as Personnel Assistant, and also whether some other position in the Commission could be found for her.
21. Pursuant to her inquiry, plaintiff received certain information from the Civil Service Commission and, by memorandum to Dawson dated June 9,1961, entitled “Probationary Periods of new employees” informed him thereof. The memorandum stated:
I am advised by Civil Service Commission that whether Item No. 19 indicating a probationary period is marked or not does not change the existing situation. Merely marking this item will not take someone out of a probationary period if they are actually in one nor will it put someone in such a trial period if they should not be. This would merely be a clerical error.
*1216 It furtlier stated that, in Dawson’s ease, be was:
not in a probationary period as tbe personnel action called for a reinstatement and if a career employee is reinstated wbo has served a probationary period in the past they do not have to complete another.
As to Mrs. Backus, it was stated that “there is no question but that she is in a probationary period 'as she is in an entirely different ‘line of work’.”
Concerning her own case, the memorandum stated that the Civil Service Commission had advised “it depends entirely upon the definition of ‘line of work’ ” since plaintiff clearly met the other requirements (that the prior work was rendered immediately preceding the career-conditional appointment and that not more than one break of less than 30 days had occurred in it).
The memorandum closed‘as follows:
This question arises only because my title is different from that I had in the old position and the job description does not reflect personnel work.
However, I did do some personnel work and I am advised that it makes no difference as to the grade or level that was occupied as long as it was the same line of work.
It was the intent of the Chairman who made the original appointment that the past service be counted toward the probationary period but through clerical error it was not specified on the personnel action.
I was further advised by Civil Service that they do recommend a liberal interpretation of “line of work” as they have no definite definition in their manual for it, and that it is entirely up to the new Chairman as to whether he wishes to interpret it liberally and say that a certain portion of prior service should be counted toward completion of the probationary period.
I will be happy to abide with any decision made by him.
This was the first time that plaintiff had asserted that former Chairman Pace had intended that plaintiff’s previous service as Confidential Assistant to the Chairman should be considered 'as satisfying the probationary period requirement under her career-conditional appointment as Personnel Assistant. Neither Dawson nor Chairman Ee thereafter at *1217 tempted to consult with, former Chairman Pace about the matter.
22. The following day, Saturday, June 10, 1961, plaintiff received a telephone call at her home from Senator Cooper advising that he had received an adverse report from the Commission about her job performance.
23. (a) Plaintiff not yet having prepared any corrective personnel papers showing that plaintiff and Mrs. Backus were serving probationary periods, Dawson himself prepared the corrective personnel forms and submitted them to Chairman Re who, on June 12, 1961, executed them. In plaintiff’s case the form consisted of another “Notification of Personnel Action”, dated June 12,1961, the effective date of which, however, as a “Correction” to plaintiff’s previous Personnel Action form effecting her “Conversion to Career Conditional Appointment”, was set forth as January 8,1961 (the date of her original appointment). This new form checked the spaces indicating that the appointment was subject to the completion of a one-year probationary period commencing January 8,1961, without counting any previous service, and further stated the form was executed to “Correct Standard Form 50 dated 1-8-61 to indicate dates for commencement of probationary period, and service toward career tenure.”
(b) On the same day, June 12,1961, plaintiff, as a result of the telephone call from Senator Cooper, again discussed her situation with Chairman Re. The Chairman reviewed Dawson’s complaints about plaintiff’s work. He stated that Dawson deemed plaintiff’s work as his Personnel Assistant to be unsatisfactory, and that Dawson desired to have her replaced. He further stated, however, that plaintiff could have another position in a lower grade if one was available in the Commission.
(c) Because of Senator Cooper’s interest in plaintiff, the Chairman desired to make a special effort to see that plaintiff was fairly and sympathetically treated. After the talk with plaintiff, he instructed Dawson to furnish him with information as to whether plaintiff had received a fair trial and whether some other job could be found for plaintiff within *1218 the Commission. He also asked Dawson to advise him as to the proper method of removing plaintiff if removal action was found to be necessary.
24. By memorandum dated June 23,1961, to Chairman Ee, Dawson set forth plaintiff’s work in the Commission prior to her appointment on January 8,1961, as Personnel Assistant. He also set forth the Civil Service Commission Regulations and Instructions concerning the removal of probationary employees. Dawson concluded that the Commission had given plaintiff:
a full and fair trial in her present position since March 29, 1961, when you took office as Chairman of the Commission. Under the regulations this certainly is a reasonable period of time to observe her performance.
Dawson had previously prepared for the Chairman’s signature a proposed letter to plaintiff removing her from her position and setting forth the agency’s reasons for the action. However, pending the receipt of assurances as to plaintiff’s having received a full and fair trial, and of information as to the possibility of transferring plaintiff to some other position, Chairman Ee had not executed the letter. Dawson’s memorandum further advised that in Dawson’s opinion, the letter did conform to the Civil Service requirements in such cases. The memorandum further detailed, in support of the proposed letter, what Dawson felt to be plaintiff’s deficiencies. The memorandum closed as follows:
Therefore, I strongly believe that we have adhered to the Civil Service Commission Instructions, Eules and Regulations. We have given said employee a fair and just trial, and that our conclusion as to her performance is based on facts.
(b) Dawson had previously advised the Chairman that, in his opinion, there were no other positions in the Commission for which plaintiff was qualified. He did not feel that she was even capable of filling satisfactorily the position of Clerk-Typist. Other positions were limited, since the agency was a small one with most positions being held by attorneys.
25. After further consideration of the matter following the receipt of Dawson’s memorandum of June 23, 1961, and after satisfying himself that plaintiff’s job performance was *1219 inadequate, that she had been given a full and fair trial, and that there was no other job in the Commission which plaintiff was qualified to fill, Chairman He advised Dawson that he decided to accept Dawson’s recommendation and would separate plaintiff.
On June 29, 1961, plaintiff was informed by Dawson of Chairman Ee’s decision. Dawson stated that she would receive a letter of termination for unsatisfactory performance.
26. Plaintiff became convinced that the new administration wanted to separate her simply because it did not wish a former Confidential Assistant to the former Chairman, who was of the opposite political party, to serve as its Personnel Assistant. She felt that she had in fact performed her personnel work competently, and that such errors as she admitted she had made were quite trivial and were being used simply as an excuse to effect a political firing.
As a result, and prior to July 1, 1961, she discussed her situation with an attorney with the Commission, who was the agency’s Employment Policy Officer. However, this officer advised that he did not have jurisdiction over issues of alleged political discrimination, his jurisdiction extending only to investigations of alleged discrimination based on race, creed, or color.
27. (a) On July 6,1961, plaintiff was called into Chairman Ee’s office and was personally informed by him of 'his decision to separate her. Plaintiff protested the decision, feeling that Dawson’s charges reflecting upon her competency were groundless. Alternate methods of effecting her separation to cause her the least embarrassment were discussed, including a possible abolition of her position. Plaintiff was asked to consider the matter and to advise the Chairman of her decision.
(b) Upon such consideration, plaintiff concluded that she would not be a party to the abolition of her position and that if the decision to separate her for incompetence were carried out, she would contest the action. Plaintiff also rejected informal suggestions from others that she resign.
(c) The following day, July 7, 1961, plaintiff advised Chairman Ee personally that she would not consent to the *1220 abolition of «her position and, in addition, banded him the following letter:
I have given considerable thought to our conversation that transpired yesterday in connection with the method of termination of my appointment as Personnel Assistant and I feel that I can not conscientiously request that the position be abolished as it 'is a necessary position..
I do earnestly request that I be given an opportunity to answer any charges that would adversely reflect upon me or my ability to perform the job adequately and in a competent manner.
I will deeply appreciate your concurrence in this request.
28. On July 11,1961, plaintiff received a letter of such date signed by Chairman Be stating that “I have concluded that your performance has been inadequate” and that “in many of your assigned duties and responsibilities your performance has not been satisfactory.” The letter went on to describe four ’areas of alleged deficiencies, with examples, as follows: (1) the giving of incorrect “technical advice * * * on various personnel management functions”, or being unable to provide advice, “such as * * * in the processing of new employees, it is not necessary to fill in items pertaining to tire fact that they are on probation for one year”; (2) the incorrect preparation of personnel actions, such as her erroneously failing to provide Health Insurance forms to an employee at the time he entered on duty with the Commission; (3) giving incorrect advice to employees on “procedures and regulations with respect to their rights and privileges”, such as the giving of incorrect advice (unspecified) to the secretary of one of the commissioners (unnamed) “as she was able to ascertain only after an independent inquiry of the Civil Service Commission”; and (4) failure to keep the Federal Personnel Manual up-to-date, so that “to a great extent, the material in the possession of the Commission is obsolete, notwithstanding the fact that upon assuming your present position more than six months ago, you were instructed to bring up-to-date all manuals and reports in the Personnel Office.” The letter closed as follows:
After careful consideration of reports submitted to me by the Executive Director on your performance as per *1221 sonnel assistant, and from my personal observation since I took office I feel that you have been given a full and fair trial in your present position and have found your performance to have been inadequate.
Therefore, this letter is to advise you that as of close of business, July 21,1961, you will be terminated from your present position. You will be retained in an active duty status during this notice period.
29. By letter dated the next day, July 12, 1961, plaintiff appealed the Commission’s action to the Appeals Examining Office of the Civil Service Commission. The appeal was grounded upon the incident specified hi the second specification of deficiencies set forth in Chairman Be’s letter of the previous day, i.e., the alleged failure to furnish an employee with Health Insurance forms when he entered on duty. Plaintiff contended that although the personnel action correcting the error was processed in June 1961, the error was actually committed on January 4, 1961, when the employee was appointed. Thus, contended plaintiff, she committed the error prior to her appointment as Personnel Assistant. She relied on certain provisions of the [Regulations which provided that, where the reasons for the termination are based, even in part, on events which occurred prior to an appointment, even a probationary employee is entitled to the same procedure as career employees, including a notice of proposed action, specific charges, and the right to reply.
Further, although plaintiff stated that she realized “that the Civil Service Commission does not evaluate the charges”, she discussed each one.
As to the first, she protested she was “quoted out of context” and that all hhe did say, as was substantiated by her memorandum of June 9,1961, which was “written in connection with my failure to denote a probationary period on a Personnel Action that was processed on January 8, 1961”, was that “it was not necessary to fill in these items to make the probationary period a valid period.”
The second was the one upon which her appeal was grounded concerning which, in an attached affidavit, she stated: “The error was committed on January 4,1961 * * *. At that tíme I was the Confidential Assistant to the Chairman and in the absence of the Administrative Officer who *1222 was 'out ill, I bandied the appointment of the employee.” Plaintiff stated that when the matter was brought to her attention in June 1961, she assumed the responsibility and stated that the original mistake was due to her administrative error because, had it not been so handled, “the employee would have had to wait until a much later date to take advantage of the benefits due him under this program, as there is atóme limit for an employee to register.”
The third, she stated, “is not sufficiently clear to deny or admit.”
The fourth she denied. 'She stated the Manual was up-to-date when she received the letter on July 11, 1961. She explained that “There was an accumulation of two years to correct and it had taken some time as I was doing this backlog of work (not only the FPM but all the accumulation of two years) in addition to keeping the day-to-day work current.”
30. On July 21,1961, plaintiff was formally separated from her position. The “Notification of Personnel Action” indicated the “Nature of Action” as “Separation — Disqualification — Inefficiency” and, as reasons, stated: “The inefficiencies are: Errors in preparing notification of personnel actions; giving incorrect technical advice to employees; and failure to keep Federal Personnel Manual up-to-date.”
31. By letter of July 26,1961, the Civil Service Commission Appeals Examining Office denied plaintiff’s appeal. After reviewing the facts concerning the incident upon which plaintiff grounded her appeal, it stated that, as it construed plaintiff’s statement, the reason complained of by the plaintiff appeared to constitute an error committed in June 1961 and not on January 4, 1961, as plaintiff claimed. The Appeals Examining Office concluded :
Since we do not have evidence to support a finding that you were dismissed for reasons wholly or in part existent before your probationary period began, we cannot accept an appeal from you against y'our removal for unsatisfactory service while serving a probationary period.
*1223 32. (a) By letter dated August 3,1961, plaintiff appealed to the Civil Service Commission Board of Appeals and Be-view from the decision of the Appeals Examining Office. In tliis letter, plaintiff, in addition to reiterating her contention that the mistake cited in the second reason set forth in her dismissal letter occurred prior to her appointment as Personnel Assistant, also charged that “There is no question that politics was involved even though I qualified for my position through the FSEE [Federal Service Entrance Examination] and was in a competitive position.” She related certain alleged statements made to her by Chairman Be in substantiation. As to her alleged incompetency, she pointed out that “the person who is supposed to have originally brought the charges of incompetency is the same person (the Executive Director) that recommended a promotion in March 1961 prior to the appointment of the new Chairman”, and further stated that the Executive Director, who was her supervisor, never told her “that my work was anything other than completely satisfactory.” She cited further examples of alleged agency arbitrary actions against her and stated that while “I have made errors * * * I am confident that the errors did not exceed the norm”, and that the agency should not be allowed to dismiss her for political reasons “in the guise of inefficiency.”
(b) By letter dated September 6, 1961, to the Board of Appeals and Beview, former Chairman Pace stated that she wished to “make a statement in connection with” plaintiff’s appeal. Mrs. Pace stated in part that:
* * * it was my decision as Chairman that her past year of service should serve as her probationary period and consequently the personnel action did not reflect the employee as being subject to such a trial period.
It was my understanding that as Chairman of the Commission I had the authority to make such a decision if the employee met the requirements of the Civil Service Commission Begulations.
(c) By letter of September 11, 1961, plaintiff supplemented her appeal in which she added the contention that her *1224 January 8, 1961 original appointment “was not subject to probation as it was decided by the Chairman who made the appointment that my prior service should count for my probation.” The letter further stated in part:
On June 12, 1961 a Personnel Action was signed by the present Chairman putting me in a probationary status. This was done in an arbitrary manner and was, of course, the preliminary to the dismissal letter. It the action had been taken in good faith the Agency would have had no objection to following procedures governing employees not in a probationary period and would have been glad to give an opportunity to correct any actual deficiencies. But as tins was not the case the Agency changed an appointment that was already in effect, for their own convenience, to prevent me from having the right of appeal as well as the other rights inherent under Part Nine of the Eegulations. I contest the right of the' present Chairman to change an appointment that had been effected by the previous Chairman six months earlier.
$ $ ^ $
It was unnecessary under the authority governing probationary employees, under which my dismissal was effected, to bring charges. It is only necessary to give conclusions and was entirely unwarranted to bring charges (which were either too vague to understand or absolutely untrue) just to damage a career employee’s record and indicates the petty, vindictive attitude on the part of the Agency.
Enclosed with the letter was an affidavit executed by plaintiff in which she repeated her contentions.
33. By letter of September 15,1961, the Civil Service Commission requested Chairman Ee’s statement concerning plaintiff’s appeal allegations, and on October 13, 1961, the Chairman sent the requested response. He stated “that none of the remarks attributed to me by Mrs. Dargo were ever uttered by me.” He recounted his original receipt of Senator Cooper’s letter of May 8,1961, and the subsequent inquiry he had made about plaintiff through Dawson, as well as Dawson’s memorandum of May 22,1961.
Enclosed with the letter was a lengthy memorandum from Dawson dated October 11, 1961. Among other things Dawson denied that he “ever recommended” plaintiff “for promo *1225 tion in March 1961 or at any other time.” The memorandum Stated in part that:
The first knowledge that I had of the fact that Mrs. Dargo was to be promoted from a GS-7 Personnel Assistant to a GS-9 Personnel Assistant was when she brought in a Request for Personnel Action, Form SF 52, and asked me to sign it, inasmuch as the then Chairman, Mrs. Pearl Carter Pace, had already approved it.
When I indicated that I disapproved and disagreed with this action I was advised by Mrs. Dargo that she had satisfied all the qualification requirements for promotion, and that the Chairman had checked this matter with the Civil Service Commission and was informed that under the rules and regulations the action was proper.
I was further advised on or about March 24,1961 by Chairman Pace that she was going to sign the Notification of Personnel Action, Form SF 50, promoting Mrs. Dargo to the position of GS-9 Personnel Assistant at the same salary that Mrs. Dargo had when she had been employed 'as a Confidential Assistant to the Chairman. This action, dated March 24, 1961, was to become effective April 9,1961. On February 15,1961, the President announced his intention to designate Dr. Re as the new Chairman of the Commission. Dr. Re’s nomination for membership on the Commission was officially sent to the Senate for confirmation on March 15, 1961. He was sworn in and designated Chairman on March 29,1961.
As a matter of fact, the action under which Mrs. Dargo was promoted is considered to have been invalid inasmuch as she could not meet the experience requirements for promotion. Yet this invalid action was prepared by Mrs. Dargo while she served as Personnel Assistant.
He further discussed the alleged errors plaintiff had made while serving as Personnel Assistant, what he considered her improper attitude to be, and denied many of the allegations she made, including alleged contributions she made to the Commission’s personnel programs.
As to plaintiff’s claim that her past service counted toward her probationary period, Dawson stated:
Mrs. Dargo’s statement that she was not required to serve a probationary period of one year as a Conditional-Career appointee because the previous chairman, Mrs. *1226 Pace, had decided that her prior service sufficed is incorrect.
Nowhere in her position description as Confidential Assistant to the Chairman is there any mention made that she performed personnel functions. In fact, the individual responsible for all personnel functions at the time, as stated in his position description, was the former Administrative Officer, Mr. Julius M. Kleiz'o.
I have noticed a statement attached to Mrs. Dargo’s Form 57, dated December 7,1960, in which she says that she has performed the functions of a personnel assistant during the past year in the absence of a Personnel Officer, working with the Administrative Officer. This does not agree with what Mr. Kleizo, Administrative Officer, has informed me. At no time did Mrs. Dargo prepare any personnel actions. The mlost that can be said is that on occasion her services as a typist were employed by Mr. Kleizo on personnel actions prepared by him. In this connection Mr. Kleizo has stated that as a typist she was inadequate. Consequently, from my own knowledge and from information that I have 'obtained from Mr. Kleizo, the extent of Mrs. Dargo’s action with relation to “personnel work” was limited to some routine typing for Mr. Kleizo.
34. Plaintiff further supplemented her pending appeal by an affidavit dated November 1, 1961. In this affidavit she included answers to the specific instances set forth in her termination letter of July 11,1961. As to the first item, she reiterated the statements made in her memorandum of June 9, 1961. As to Item 2, she stated that what was involved was a Health Benefit Registration Form, and not a Personnel Action. She alleged that Item 3 was too vague to be understood and that she could recall no such instance as was described. As to the “last charge — that of the Personnel Manual not being up-to-date” — she stated “this is absolutely untrue”, and further stated that at the time she received the dismissal letter on July 11, 1961, the Manual had been brought completely up-to-date.
She further reiterated in the affidavit certain alleged statements made by Chairman Re on July 6,1961.
35. (a) By letter of November 7,1961, the Board of Appeals and Review of the Civil Service Commission forwarded to plaintiff Chairman Re’s letter of October 13, 1961, together with the Dawson memorandum enclosed therewith, *1227 and by letter of November 27, 1961, plaintiff submitted her reply thereto. She complained that the reasons set forth in Dawson’s memorandum for her termination were different from those set forth in the dismissal notice of July 11, 1961, and consisted of new charges to which she had never been given an opportunity to respond. She pointed out that although Dawson disclaimed recommending her promotion he did not “explain why, if he disapproved of the action, he would sign it * * and that “furthermore, if the Agency believed the promotion was invalid corrective action could have been taken at any time. This was not done.” She closed the letter as follows:
I am of the opinion that Chairman Re was arbitrary and capricious m terminating my employment; that he denied due process of law in my dismissal; and that I should have been granted an opportunity for a hearing with respect to the charges that were brought against me.
(b) Enclosed with the letter was a five-page affidavit, executed by plaintiff, making a detailed reply to the statements contained in Dawson’s memorandum. It was alleged in the affidavit that many statements in the Dawson memorandum were false. She also stated that Dawson never discussed with her any alleged errors she had made, nor did he give her any instructions or assistance. She defended her delay in following Dawson’s instructions to change the personnel records of Mrs. Backus, herself, and Dawson until she had obtained the necessary information from the Civil Service Commission, which information she submitted to Dawson by her memorandum of June 9,1961. She stated that upon the receipt of the information from the Commission, she did prepare corrective actions but discovered that Dawson had already prepared them. She stated that in her opinion this did not amount to a refusal to follow instructions.
As to her probation period, she stated:
It was the intent of the former Chairman, who was the appointing officer, that my prior year’s service, as Confidential Assistant during 1960, should serve as my probationary period. Consequently, no probation was designated on the Personnel Action appointing me the Personnel Assistant. I later learned that I should have specified that probation was completed. This is what *1228 I failed to fill out in item 19 on the SF50. Apparently, Mr. Dawson decided to take advantage of this failure and have a new action cut showing that I was subject to probation.
(c) In the meantime, former Chairman Pace submitted to the Board of Appeals and Review another letter dated November 15, 1961, constituting a supplement to her prior statement of September 6, 1961. The letter stated in part that Dawson had in fact recommended plaintiff for a promotion in March 1961 and that Dawson “at no time indicated that he was anything other than enthusiastic about this action and certainly at no time voiced any disapproval.” Further, the letter reiterated her statement that she “considered Mrs. Dargo’s prior service during 1960 to have fulfilled the probationary requirement in her position as Personnel Assistant.”
36. By letter of January 11, 1962, the Board of Appeals and Review advised plaintiff that it affirmed the decision of the Appeals Examining Office that plaintiff’s dismissal was not based upon an omission which occurred prior to plaintiff’s appointment. The Board stated, however, that plaintiff had raised two additional issues not presented in her original appeal to the Appeals Examining Office, which issues were (1) that politics was involved in her separation, and (2) that her service prior to her appointment 'as Personnel Assistant on January 8, 1961, satisfied the probationary requirement for such appointment. The Board stated that with respect to such issues plaintiff would have a right of appeal “under Part 9 lotf the Civil Service Regulations.” The Board stated that it was therefore returning the case to the Appeals Examining Office “for such further consideration and action as may be found appropriate with respect to the issues raised subsequent to the issuance of its decision of July 26,1961.”
37. By letter of February 15,1962, the Appeals Examining Office advised plaintiff as follows with respect to the first issue which the Appeals Board had remanded:
The issue of discrimination for political reasons was referred to the Civil 'Service Commissioners for decision.
The Commissioners decided (1) that the evidence presented does not support the allegation that partisan polit *1229 ical discrimination was exercised and (2) that further investigation of the issue is not warranted.
As to the second issue concerning her prior service, it was stated that plaintiff’s contention “cannot he accepted.” The letter stated:
Your position descriptions in Schedule C indicate you were required to serve as full time Administrative Assistant and Confidential Assistant to Mrs. Pace, Commissioner and later Chairman of FCSC. If in fact during the course of this employment you did perform some duties that could be considered as in the same line of work as that of Personnel Assistant, such duties could only have been incidental to your primary duties as Confidential Assistant, etc., and not full time service in the same line of work as specified in S-2 in the Federal Personnel Manual.
We find that your prior service does not meet the specific requirement of service in the same line of work.
The letter further concluded:
Having found that your dismissal was not based upon reasons wholly or in part existent prior to your appointment in the competitive service; that your allegation of political discrimination is not supported by the evidence; and that your prior service is not creditable toward completion of a probationary period of employment because it did n'ot meet the requirement of service in the same line of work, our conclusion is that you were dismissed during a probation period for reasons coming into existence during the period of probation. Inasmuch as employees in this class have no right of appeal to the Civil Service Commission we must rej ect your appeal.
38. By letter of February 28,1962, to the Board of Appeals and Beview in response to the Board’s letter of January 11, 1962 denying plaintiff’s appeal based on the contention that she was dismissed for reasons existing prior to her appointment as Personnel Assistant (finding 36), plaintiff contended that she was being charged with falsifying her Form 57. She so concluded because Dawson’s memorandum of October 11, 1961, which had been submitted to the Commission with Chairman He’s letter, stated that plaintiff had not actually performed any personnel work prior to her appointment as Personnel Assistant. However, plaintiff’s Form 57 dated *1230 December 7, 1960, stated that she did perform such duties while working for Administrative Officer Kleizo.
Plaintiff contended that since she was being charged with falsifying her application Form 57, she was entitled, under Appendix B to Section 5 of the Federal Personnel Manual, to a notification in writing of the proposed separation and a right to reply.
39. (a) By letter of March 8,1962, to the Board of Appeals and Review, plaintiff appealed the second decision of the Appeals Examining Office dated February 15,1962 (finding 37). On the question of her probationary status, plaintiff stated in part:
When the appointment was made on January 8,1961, it was the determination of the Chairman that my probation had been completed.
_ It is the responsibility of the appointing officer, at the time of appointment, to determine questions of probation. The appointing officer not only has the authority to make this determination but the responsibility.
In the case of my appointment the Chairman, who was the appointing officer, exercised her authority and fulfilled her responsibility in making this determination. A new Chairman, just because ne does not agree with this decision, cannot invalidate an appointment the former chairman, who had the authority at the time, made.
As to the issue of political discrimination, plaintiff also stated in part:
As to the question of political discrimination — I have related the facts as they occurred and statements that were made to me to support my contention of political discrimination. I would like to point out that all documents I have submitted concerning what transpired have been sworn statements. The record shows that there are no verified statements or affidavits from the Foreign Claims Settlement Commission denying any of my charges.
In view of the obviously false charges, the unwarranted methods used, and statements made to me and other employees concerning my unsuitability as personnel assistant due to having been Confidential Assistant of another administration, I can only conclude this amounts to political discrimination.
*1231 I do not understand how political discrimination could be more in evidence, however I am certainly at a disadvantage if you refuse to accept my verified statements and will not conduct an investigation. I earnestly request that you do so to determine if my allegations are true or not.
(b) By letter of April 17, 1962, plaintiff further supplemented her appeal pending before the Board of Appeals and Review, charging that Dawson “acted arbitrarily, capriciously, and maliciously in recommending my dismissal from Federal employment”, and that Dawson’s “actions toward me were motivated by personal animus.” She stated that from the date of her appointment as Personnel Assistant on January 8,1961, until the second week of April 1961 she was actually “operating two offices”, (1) as administrative assistant to Dawson, and (2) as being in charge of the operation of the Personnel Office, located elsewhere. She claimed that she was therefore handicapped in performing her personnel work and reducing the backlog therein “some of which dated back almost three years.” She stated that she did not physically move into the Personnel Office until the second week of April 1961, after which she “very effectively reduced the backlog of work, and brought the personnel office into working order. Nevertheless on May 22,1961, less than six weeks after having the personnel office at my disposal full time, Executive Director Dawson recommended my dismissal. I was unaware of this dissatisfaction on the part of Mr. Dawson.” The letter, consisting of five pages, further related, among other things, the conversations she allegedly had with Dawson, and concluded that she 'had not been given a full and fair trial.
40. (a) By letter of June 7, 1962, to plaintiff, the Board of Appeals and Review denied plaintiff’s appeal. The letter stated in part:
The Board of Appeals and Review has fully considered the entire appellate record, including all representations made on your behalf and the representations of the employing agency.
The Appeals Examining Office’s decision of February 15, 1962, held that you had no right of appeal to the *1232 Commission from the separation action of July 21,1961, and that your appeal must, therefore, be rejected. This ' determination by the Appeals Examining Office was based upon three findings. One was the finding, already affirmed by the Board of Appeals and Beview in its decision of January 11, 1962, that your dismissal was not for reasons existing wholly or in part before your probationary period began. Another was the finding by the Civil Service Commissioners that the evidence presented in your case does not support the allegation that your separation was due to political reasons and that further investigation of the issue of political discrimination is not warranted. Lastly,.the Appeals Examining Office made an initial finding that your service as Confidential Assistant to the Chairman, Foreign Claims Settlement Commission, was not in the same line of work as your service as Personnel Assistant and was not, therefore, properly creditable toward completion of your probationary period.
In your representations in support of the present appeal to the Board, you take issue with each of the three findings specified above, and you also raise questions about the merits of the employing agency’s decision to effect your separation. Since in the adjudication of an appeal under Part 9 of the Civil Service Regulations the Commission does not review the merits of an employing agency’s separation action, the Board could not give favorable consideration to your contentions in that respect even if your appeal could properly be accepted for adjudication under Part 9. The finding of the Civil Service Commissioners on the issue of political discrimination is not subject to review by the Board, and the finding of the Board in its decision of January 11,1962, was dispositive of the issue of whether your dismissal was for reasons existing before the beginning of your probationary period. Accordingly, the sole issue in the present appeal which is properly for resolution by the Board is the correctness of the Appeals Examining Office’s determination that your service as Confidential Assistant to the Chairman, Foreign Claims Settlement Commission? was not creditable toward completion of your probationary period.
It is clear that the regular duties of the position of Confidential Assistant to the Chairman in class GrS-301-9 are not in the same line of work as the regular duties of positions of Personnel Assistant in classes CS-201-7 and CS-201-9. The performance of some personnel work while serving in an official position of Confidential *1233 Assistant to tbe Chairman does not warrant consideration of such official position as being in the same line of work as Personnel Assistant so as to make service as Confidential Assistant to the Chairman creditable toward completion of probation in the position of Personnel Assistant. Accordingly, the Board finds that your probationary period in the position of Personnel Assistant OS-7 commenced on January 8, 1961, the effective date of your career-conditional appointment.
In view of the foregoing, the Board of Appeals and Review concludes that your separation from the service, effective July 21, 1961, was subject to the provisions of Section 2.301(c)(1) of the Civil Service Regulations; that you therefore have no right of appeal to the Commission from the separation action except as provided in Section 9.301(b) of the Civil Service Regulations; and that the Civil Service Commissioners’ finding on your allegation of political discrimination was finally dispositive of the only issue in your case which could properly be adjudicated under Section 9.301(b). The Appeals Examining Office’s decision of February 15, 1962, to reject your appeal is therefore correct and is hereby affirmed.
'Section 9.306 of the Civil Service Regulations provides that the Board’s decision on appeal shall be final and there is no further right of appeal.
(b) Plaintiff’s petition was filed herein on August 28,1962.
41. The dismissal of plaintiff by the Foreign Claims Settlement Commission is not shown to have been arbitrary or capricious, or to have been motivated by any personal animus, or to have been politically inspired, or to have been grounded upon considerations other than those pertaining to plaintiff’s competence. In addition, the determinations by the Civil Service Commission are similarly not shown to have been arbitrary or capricious, or not to have been based on substantial evidence.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

Tbe opinion, findings of fact and recommended conclusion of law are sub-mitttd under tbe order of reference and Rule 57(a).

 The Federal Personnel Manual, Chapter S-2-18 and 19, then in effect, set forth the conditions under which prior service might be counted toward completion of a probationary period. One of the conditions was that :
“(b) It was In the same line of work and in the same agency as the position with respect to which the action is taken. All service to be counted must have been continuously in the same line of work; there must have been no interruption by official position change to another line of work.” (Finding 10.)
5 C.F.R. § 2.301(a) (3), 19 Fed. Reg. 8610 (1954), requiring the service of a probationary period of one year under career-conditional appointments, provides that “Prior service which shall be counted toward completion of probation shall he published in the Federal Personnel Manual.”
Here too plaintiff failed to mention this contention in her initial appeal to the Appeals Examining Office. It was first raised in plaintiff’s first appeal to the Board of Appeals and Review, which, as on the political contention, returned the matter to the Appeals Examining Office for an original determination.

 As noted (footnote 1), a one-year probationary period is required by the Civil Service Commission on a “Career conditional” type of appointment, which plaintiff had. The Civil Service Act, 8 Ü.S.C. § 633 (1958 ed.) provides that “there shall be a period of probation before any absolute appointment or employment * »

 Those who have attained “classified civil service” status are entitled to the protection of the Lloyd-LaEollette Act of August 24, 1912, 37 Stat. 539, 555, as amended by the Act of June 10, 1948, 62 Stat. 354, 5 U.S.C. § 652(a) (1958 ed.).

 The CivU Service Regulations provide:
“If an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued Federal employment, his services shall be terminated by notifying him in writing as to why he is being terminated and the effective date of the action. The information in the notice as to why he is being terminated must, as a minimum, consist of the agency’s conclusions as to the inadequacies of his performance or conduct.” 5 C.F.R. § 2.301(c) (1) ; 26 Fed. Reg. 181 (1961).

 Blackmon v. United States, 128 Ct. Cl. 288, 120 F. Supp. 774 (1954) ; Lawyer v. United States, supra; Ciaffone v. United States, 126 Ct. Cl. 532 (1953) ; Greenway v. United States, supra.