Max **BANDER**

v.

**UNITED STATES.**

No. 313-56.

United States Court of Claims.

Jan. 15, 1958.

As Amended April 2, 1958.

Robert H. Reiter, Washington, D. C., for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WASHINGTON, Circuit Judge, sitting by designation.

Plaintiff, a World War II veteran, sues the United States for salary claimed to be due him for a period following his allegedly unlawful discharge from employment in the Post Office Department. Both parties have moved for summary judgment. The facts, as shown by the pleadings and exhibits attached to the parties' motions, are as follows:

Plaintiff first entered civilian employment with the Government on January 24, 1942, when he received a probational appointment in the War Department as a student instructor. With the exception of short periods of time, and a military furlough from December 3, 1942, to May 27, 1946, plaintiff remained in the Federal service until October 1, 1952, when he resigned to accept employment in private industry. From June 30, 1942, to the date of his resignation, plaintiff was employed by, or on military furlough from, the Department of Commerce where he served in the capacity of an Economist or Statistician. During this employment plaintiff acquired competitive civil service status.

On November 1, 1955, over three years after resigning his position at the Department of Commerce, plaintiff was appointed by the Post Office Department to the position of Probational Classified Career Substitute Carrier, subject to investigation and to the condition that plaintiff complete satisfactorily a probationary period of one year.[1] Effective February 25, 1956, the appointment was

1. He was apparently selected from a list of eligibles dated September 21, 1955, compiled following a competitive examination for the position. His civil service rating was 87.8.

converted to a position of Regular Carrier subject to the completion of the one year probationary period which had commenced on November 1, 1955.

On January 26, 1956, the superintendent of the branch post office to which plaintiff was assigned notified him in writing that his work was deficient in enumerated respects and that he must "strive and obtain the minimum standards [therein set out] required by the Post Office Department" for "casing" mail. On February 2, 1956, plaintiff was notified in writing by the Foreman of Carriers that he had shown "very little improvement in preparing this route for delivery" and was asked to furnish an explanation for this failure. Finally, by letter dated March 9, 1956, following recommendations of the branch superintendent and Foreman of Carriers, the Postmaster notified plaintiff that he would be separated from the position of carrier effective March 23, 1956, because of failure to demonstrate the necessary qualifications for the position.

Prior to the effective date of his removal, plaintiff requested relief through the grievance procedure provided by the Post Office Department. On May 14, 1956, he was notified that the Postmaster General had decided that upon review he found no grounds to modify the action of the Postmaster in separating plaintiff "because of failure to qualify in case routing during the probationary period." On March 30, 1956, plaintiff appealed his dismissal to the Civil Service Commission, contending that he had not received the written notice required by section 14 of the Veterans' Preference Act. On June 1, 1956, the Commission, through its Board of Appeals and Review, ruled that he as not entitled to the benefits of section 14 of the act and finally declined to accept his appeal. This suit was filed on July 20, 1956.

1. Plaintiff renews his contention here that he was dismissed without being accorded the 30-day advance written notice guaranteed to him by section 14 of the Veterans' Preference Act of 1944, 5 U.S.C.A. § 863. This section provides in part:

"No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service * * * shall be discharged, suspended for more than thirty days, * * * except for such cause as will promote the efficiency of the service and for reasons given in writing, and * * shall have at least thirty days' advance written notice * * * shall be allowed a reasonable time for answering the same personally and in writing, * * * and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting * * * ."

The issue whether plaintiff was entitled to the procedural rights thus provided turns on whether he had "completed a probationary * * * period" within the meaning of the statutory language. Admittedly the plaintiff did not serve out his probationary period with the Post Office Department, but he claims that the language of section 14 is nevertheless met because he had completed a probationary period in his previous service with the Department of Commerce some years earlier. Defendant urges that completion of the prior probationary period does not suffice.

The Veterans' Preference Act does not, of course, provide a direct answer to this question, or define the term "probationary period." However, since the Civil Service Act of 1883 there has been a requirement for "a period of probation before any absolute appointment or employment" in the civil service. 22 Stat. 403, 5 U.S.C.A. § 633. This period has from the beginning been defined in the Civil Service Rules. It is thus necessary to look to the Rules for such assistance as they may give in determining the meaning of the disputed provision of the Veterans' Preference Act. Both parties place much reliance on section 2.113(a) and (b)(2) of the Civil Service Regula-

tions,[2] 5 C.F.R. § 2.113 (a) and (b)(2) (1949), which provides:

"§ 2.113 *Probational appointment.* (a) A person selected for other than temporary appointment shall be given a probational appointment. The first year of service under this appointment shall be a probationary period.

\* \* \* \* \* \*

"(b) The following service will be counted toward completion of the probationary period:

\* \* \* \* \* \*

"(2) All continuous service, without regard to the type of appointment under which rendered, immediately preceding probational appointment or acquisition of status under § 3.1 (b) (5) and (7) of Rule III (Part 3 of this chapter), which was in the same line of work and in the same agency as the position to which probationally appointed or in which status is acquired."

■ The evident thrust of the regulation is that, in order for previous service to be included as part of the probationary period, it must have immediately preceded the probational appointment without interruption and must have been in the same line of work with the same agency. This would rule out the plaintiff's previous Government service because none of it was as a mail carrier or for the Post Office Department, and it did not immediately precede the probational appointment as carrier; instead there was a 3-year interval when he was not in the Government service.

■ The plaintiff contends that the regulation permits him to treat his prior service as his probationary period because he acquired status in his prior service. We must reject plaintiff's construction of the language. The regulation uses the term "in which status *is*

acquired" (emphasis supplied), indicating that it is not referring to a past acquisition of status, only to status acquired in a position currently occupied. Plaintiff must concede, of course, that he did not acquire status with the Post Office Department. Moreover, the clause relied on relates back to the term "acquisition of status under § 3.1(b) (5) and (7) of Rule III." These last subsections[3] refer to two classes of persons (neither of which includes the plaintiff) who may acquire competitive status other than by probational appointment through competitive examination. The regulation at issue, both in terms and by the reference, differentiates probational appointments from acquisitions of status pursuant to section 3.1(b) (5) and (7) of Rule III. Since the plaintiff's service was pursuant to probational appointment, he did not acquire status in the way that term is used in section 2.113(b) (2).

We do not understand that plaintiff contends that the regulation, construed as we construe it, is invalid as applied to him. But in any event such a contention could not be upheld. Even though plaintiff previously had acquired competitive status his previous service was in wholly unrelated fields of work, and it plainly was reasonable to require him to demonstrate his aptitude and suitability for the new position of carrier, since he had not already demonstrated his ability to the Post Office Department, or indeed to any agency, in that kind of work. There is certainly no indication that Congress intended to give the procedural rights of section 14 to veterans who had not proved their abilities to the employing agency either in the job for which they were hired or in the same type of work in the same agency. Cf. Kirkpatrick v. Gray, 91 U.S.App.D.C. 138, 198 F.2d 533, certiorari denied Priestly v. Donaldson, 1952, 344 U.S.

---

2. This regulation was issued in 1947. The civil service regulations, of which it is a part, by sections 1.1 and 1.101 thereof (5 C.F.R. §§ 1.1 and 1.101 (1949)) are made applicable, except where otherwise indicated, to all positions and persons in the competitive service subject to the Civil Service Rules.

3. 5 C.F.R. § 3.1(b) (5) and (7) (1949).

880, 73 S.Ct. 178, 97 L.Ed. 682; Kohlberg v. Gray, 1953, 93 U.S.App.D.C. 97, 207 F.2d 35, certiorari denied, 1954, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425. We are not saying that Bander lost whatever status or rights he may previously have acquired; much less are we holding that any change by a Government employee in his agency or line of work means automatic loss of his rights or status. We are simply interpreting the quoted regulation, as it applies to the facts now before us.

■■ We need not, and do not, hold that the regulation will necessarily be valid and reasonable as applied to every situation. We only hold that in the circumstances here, it was not unreasonable to refuse to count plaintiff's prior service as his probationary period. Whether some other action would have been equally reasonable is not for us to decide. We note also that this is not a case where the plaintiff was discharged because of his beliefs or some trait of character or personality; the plaintiff was discharged because he was found to be incapable of performing his duties under the minimum standards set for a carrier, whatever may have been his capabilities in other respects or for other jobs. Nor was he separated without first being advised of the charges against his work and being given an opportunity to improve his work and/or answer the charges.[4]

Perhaps the Government could have treated plaintiff more generously than it did—perhaps it could have tendered him an appointment without probation. But it did not do so, and we have found nothing to suggest that it was under compulsion to do so. If plaintiff had been reinstated, rather than hired on a probationary basis, an entirely different question would be presented. Regulation 7.101 provides that persons having a competitive status who have left Government employment "may be reinstated," if certain conditions are met.[5] The regulation does not make reinstatement compulsory, and no statute or other regulation does so, or indicates that a former employee who accepts a new probationary appointment may later claim the rights and privileges of one who has been reinstated. Plaintiff makes no such contention in this case, and we discern no reason why such a contention should be sustained on the present facts. Nor, of course, does the plaintiff make any suggestion that he was forced to waive or barter away any right to reinstatement as a condition of receiving employment with the Post Office Department.

Plaintiff relies on Lamb v. United States, 1950, 90 F.Supp. 369, 116 Ct.Cl. 325 as support for his position here. But that case was not concerned with the question whether a veteran had completed his probationary period. Rather it involved the rights of a veteran who transferred from the competitive to the excepted service without a break in Federal employment and without being required to serve a probationary period in the excepted position. The decision is not applicable here.

We therefore conclude that plaintiff is not entitled to the protections of section 14 of the Veterans' Preference Act.

2. Plaintiff also contends that the procedure for his removal did not comply with section 6(a) of the Lloyd-LaFollette

---

4. Plaintiff was notified in writing of the alleged deficiencies in his work on January 26, 1956, and again on February 2, 1956. The last communication also requested him to furnish an explanation of his failure. Thereafter, he had ample opportunity to file a written answer to the charges in the 35-day period which elapsed before the letter of March 9, 1956, was sent notifying him of his separation effective March 23, 1956. Apparently he did not answer the charges. Whether his work was in fact deficient we do not, of course, undertake to determine. Keim v. United States, 1900, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774.

5. One of the requirements for reinstatement is that the qualifications standards of the Commission for promotion or reassignment to the position must be met. Section 7.101(a) (4). We are not informed what these standards were or whether the plaintiff could have met them, and thus whether he would have been eligible for reinstatement.

Act, 37 Stat. 539, as amended by the Act of June 10, 1948, 62 Stat. 354, 5 U.S.C.A. § 652(a). This section provides:

"No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. Any person whose removal or suspension without pay is sought shall (1) have notice of the same and of any charges preferred against him; (2) be furnished with a copy of such charges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits; and (4) be furnished at the earliest practicable date with a written decision on such answer. * *"

It will be observed that this section applies only to persons "in the classified civil service of the United States." Plaintiff must therefore fit within that category to be entitled to the protection of the section.

■ In Nadelhaft v. United States, 1955, 131 F.Supp. 930, 132 Ct.Cl. 316, this court held that a person serving a probational period is not in the classified civil service within the meaning of this section. Cf. Golding v. Weeks, 1955, 96 U.S.App.D.C. 192, 225 F.2d 31. It is true that in Nadelhaft the employee had not previously held positions in the classified service, whereas this plaintiff, during his previous Government employment, was in the classified civil service and had competitive status. But he voluntarily resigned his position at the Commerce Department to take private employment in 1952, and at that time he left the classified service: he no longer served in a position—classified or otherwise—even though he may have retained his competitive status. We think it plain that his probational appointment by the Post Office some three years later did not reinstate him in the classified civil service within the meaning of this section. See Bailey v. Richardson, 1950, 86 U.S. App.D.C. 248, 255, 182 F.2d 46, 53, affirmed by an equally divided court 1951,

341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352; 5 C.F.R. § 4.301(a) (4) and (5) (1949); cf. Levy v. Woods, 1948, 84 U.S.App.D.C. 138, 171 F.2d 145; Borak v. Biddle, 1944, 78 U.S.App.D.C. 374, 141 F.2d 278. Accordingly, when separated he had not earned the right to the procedure accorded by section 6(a) of the Lloyd-LaFollette Act, supra. In any event, although we do not find it necessary to decide this, it would seem that the procedure contemplated by the section was substantially afforded here. See footnote 4, supra.

We note further that the plaintiff does not claim any violation by the Post Office Department of any regulation which was promulgated to implement its statutory authority, cf. Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403.

For these reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. The petition is dismissed.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

MADDEN, Judge (dissenting).

The plaintiff had "competitive status" in the Federal Civil Service. Having that status and having served for more than five years, he was eligible, under section 7.101(1) of the Civil Service Regulations, 5 C.F.R. 7.101(1), for reinstatement without time limitation. Being a veteran, he was, for that reason also, eligible for reinstatement without time limitation, and would have been so eligible even if he had had only one year of prior service, barely enough to have acquired competitive status. 5 C.F.R. 7.101(3). That means, for example, he could have been hired as an Economist or Statistician by any agency of the Government, in any civil service grade which the agency, by interview or examination of records of his experience or training, thought he was qualified to fill. If he had been so hired, he would, of course, have had all the rights accorded by the Lloyd-

LaFollette Act and the Veterans' Preference Act.

The court holds that the plaintiff had none of these rights; that he held his position merely at the will of his superior who could discharge him without any pretense of complying with the procedural requirements of the statutes just referred to.

The vast difference between the full and complete rights which the plaintiff would have had in the circumstances outlined above, and the complete absence of rights which he suffers in the actual circumstances, would seem to call for an explanation. The explanation which the court accepts as sufficient is that the Post Office Department did not choose to hire him by the reinstatement route. It chose to hire him "off the street", so to speak, as it would hire any person who desired to become a mail carrier.

The plaintiff applies for a job as a mail carrier. By oral statement or by filling out a form he advises the postmaster that he has held a civil service position for more than five years; that he acquired a competitive status during the first of the five years; and that he is a veteran. The postmaster says that it may be assumed from the plaintiff's having held a position as an economist and statistician in the Department of Commerce that he can read and write and cipher; that it is obvious from looking at the plaintiff that he can walk; that if he would pick up a mail bag the postmaster could tell whether he could carry it. The postmaster says, I could put you to work immediately, with all the rights and privileges of an old civil servant and a veteran, but I do not choose to do so. So will you please take these papers indicating the time and content of the next competitive examination for mail carriers. If you qualify as a result of the examination, you will have a job, but you will not have any legal protection whatever for the first year of your employment. This is the way I choose to do it, and you may take it, or leave it.

The plaintiff took the competitive examination, along with other applicants who had no "competitive status", and who had never been Government Economists or Statisticians, and, not unnaturally, got the job. But he apparently turned out to be a very bad mail carrier. The record indicates that he could and should have been discharged, even if the procedural requirements of the Veterans' Preference Act and the Lloyd-LaFollette Act had been complied with. If they had been complied with, we would not, of course, have presumed to review the merits of the plaintiff's competence as a mail carrier.

The issue in this case, and I think it is an important issue, is whether the regulations creating and defining eligibility for reinstatement of experienced civil servants to the civil service can be, in effect, nullified by an agency executive, who, having a place for which an applicant for reinstatement seems to be qualified, chooses not to reinstate him, but to put him completely outside the classified civil service and make him start all over again to win competitive status.

The quotation in the opinion of the court from section 2.113 of the Civil Service Regulations does not, it seems to me, shed any light upon our question. It concerns only the original acquisition of status. If it means what the court holds it to mean, that one must acquire status every time he changes to another Government agency, or even changes to another line of work in the same agency, it is violated with impunity many times every day. If any general attempt were made to administer the regulation as the court has construed it, the demoralizing effect of such a change would require the rewriting of the regulation.

The court points out that Regulation 7.101 provides that persons having a competitive status who have left Government employment *may be reinstated*, if certain conditions are met. The court concludes, rightly, that a hiring executive is not obliged to give a former Government employee a job; that he may, instead, fill the job from the outside by taking an eligible from civil service rosters, or in any other lawful way. But the

court also concludes, erroneously, I think, that this discretion includes the right to haggle with the former Government employee who has competitive status and is eligible for reinstatement, and strike a bargain with him that he may have the job if he will waive his competitive status and submit to a new probationary period. I think he can no more do this, than he could require an applicant to waive a part of the statutory salary as a condition to getting the desired job.

Happily, what was done in the instant case seems to have been unusual. Ambitious civil servants who acquire their competitive status as elevator operators or file clerks can go to night school and learn to be economists or statisticians or other more highly skilled persons; can find jobs calling for those skills in the same or another agency; and do not have to go outside the pale in order to come in again and serve a probationary period as employees at will. In short, as the law and the regulations are actually administered, one's competitive status is not competitive status as an elevator operator, or a mail carrier, or a statistician, or an information specialist. It is competitive status in the classified civil service of the United States. I think that the way in which the law is actually administered is the only lawful way in which it can be administered. I think that the plaintiff could no more bargain away his statutory civil service status than he could bargain away a part of the salary which the law prescribed for the position which he held. Glavey v. United States, 182 U.S. 595, 21 S.Ct. 891, 45 L.Ed. 1247.

To give to the occasional agency executive the capricious power which was exercised in the instant case doesn't do the Government any real good. In the rare case in which the person who is reinstated turns out to be incompetent, the procedures of the Lloyd-LaFollette Act and the Veterans' Preference Act are not seriously burdensome to the Government. A few more days' notice, the reading and consideration of an answer are not too much to accord one who has, at another time, served the Government competently.

I think there is danger that the instant decision may put new and regrettable ideas in the heads of agency executives. As I have said, they have not, except possibly on rare occasions, done what was done in the plaintiff's case. I suppose that it had not occurred to them that it could be done. I think we should say that it cannot be done.

LITTLETON, Judge, joins in the foregoing dissenting opinion.