**Seymour COHEN**

v.

**The UNITED STATES.**

No. 319-66.

United States Court of Claims.

Nov. 9, 1967.

Carl L. Shipley, Washington, D. C., attorney of record for plaintiff. Samuel Resnicoff, New York City, and Shipley, Akerman & Pickett, Washington, D. C., of counsel.

H. Thomas Greene, with whom was Acting Asst. Atty. Gen. Carl Eardley, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

SKELTON, Judge.

On September 29, 1962, the plaintiff was given a career appointment as a Substitute Mail Equipment Handler in the Post Office Department located in New York City. As is customary for all such appointments, the plaintiff was to serve a one year probationary period. On March 27, 1963, the plaintiff was separated from the Government service for disqualification described as "medical unsuitability." The above action resulted from the following facts.

It appears that a specialist made a diagnosis that the plaintiff was suffering

from a hernia and based upon the specialist's report, the plaintiff's personal physician gave him a medical certificate on March 11, 1963. Then on March 12, and again on March 14, 1963, the plaintiff requested assignment to a work detail involving lighter duties basing such requests on the medical certificate which he had submitted to post office officials.

The Post Office Department felt that the plaintiff was physically unsuitable because of this condition, and thus was unable to do the heavy work that a mail handler must perform. Consequently, the post office notified the plaintiff on March 22, 1963, that he was to be separated during the probationary period because of medical unsuitability and that this separation was to be effective March 27, 1963. This notice cited the request for light duty and the medical certificate.

After the plaintiff submitted another medical report and after his supervisor had submitted an evaluation of his job performance, the Chief Personnel Officer arranged for a physical fitness examination to be conducted by the United States Public Health Service. On April 17, 1963, the Public Health Service physician made a recommendation that the plaintiff was "[n]ot fit for duties of mail handler." Following this medical examination, on April 22, 1963, a notification of personnel action was completed which confirmed the effective date of separation as being March 27, 1963. The plaintiff was allowed a grievance appeal after which the hearing committee recommended that the separation action was justified and should be sustained. The Postmaster approved the recommendation on July 3, 1963. Subsequently, pursuant to a communication from the plaintiff's counsel, his case was

reconsidered by the Postmaster and, under date of April 7, 1964, his separation was found to be procedurally correct.[1] The plaintiff contends that not only is he entitled to the benefits of the Veterans' Preference Act of 1944, c. 287, 58 Stat. 387, but also that he was not given advance written notice stating the reasons, specifically and in detail, for the proposed action terminating his employment, nor was he allowed a reasonable time for filing a written answer to any such notice, or for furnishing affidavits in support of his answer. He complains further that he was given no notice of adverse decision, and was not informed of any right of appeal he might have to the Civil Service Commission and was denied any opportunity to have any answer he would have filed if given an opportunity by the Post Office Department.

The plaintiff, while maintaining in his petition that he is entitled to the benefits of the Veterans' Preference Act of 1944, supra, has not responded to the defendant's position in its brief regarding the inapplicability of that Act to the plaintiff. From a casual reading of the Act, it can be seen that it applies only to preference eligibles who have completed their probationary period. The instant plaintiff does not meet this requirement. Hence, the only possible source of rights is in the regulations. See Bander v. United States, 158 F.Supp. 564, 141 Ct.Cl. 373 (1958), cert. denied, 358 U.S. 855, 79 S.Ct. 85, 3 L.Ed.2d 89.

The principal question presented by this case, which is one of first impression, is whether the plaintiff's separation in March 1963, was "based in whole or in part on conditions arising before his appointment" within the meaning of 5

---

1. During the same period of time that the plaintiff was protesting his separation, he was also pursuing a possible avenue of relief with the Bureau of Employees' Compensation of the Department of Labor. On March 25, 1963, the plaintiff filed a claim stating that he incurred a hernia in the course of his employment.

This claim was rejected on November 8, 1963, because the fact of injury while in the performance of his duty had not been established. Now, however, to support his claim, the plaintiff represents facts which diametrically oppose those previously presented to the Bureau.

C.F.R. § 2.301(c) (2) (1961 ed. 1963 Supp.) [2] which reads:

§ 2.301 Career-conditional and career appointments.

\* \* \* \* \* \*

(c) *Procedure for terminating a probationer.*

\* \* \* \* \* \*

(2) If an agency decides to terminate an employee during the probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the action shall be processed in the same manner as actions taken under Subpart C of Part 22 of this Chapter and the employee shall have the right of appeal provided in § 22.304 of that subpart.[3]

■ We hold that the plaintiff was not entitled to the procedural safeguards prescribed by § 2.301(c) (2) but, rather, was subject to and accorded the rights pursuant to 5 C.F.R. § 2.301(c) (1) (1961 ed. 1963 Supp.).[4]

2. The current procedures for the separation of probationers are prescribed by 5 C.F.R. § 315.804–805 (1964 ed.).

3. Those procedures are as follows:
"Subpart C—Suspensions of Thirty (30) Days or Less

\* \* \* \* \*

"§ 22.302 Procedures.

"(a) *Notice of proposed adverse action.* An employee against whom adverse action is sought shall be given advance written notice stating the reasons, specifically and in detail, for the proposed action.

"(b) *Employee's answer.* The employee shall be allowed a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer. If the employee answers the notice, his answer shall be considered by the agency in reaching its decision on the proposed adverse action.

"(c) *Notice of adverse decision.* The employee shall be notified of the agency's decision at the earliest practicable date. The notice of decision shall be in writing and shall be delivered to the employee at or before the time the action will be made effective. It shall inform the employee of the reasons for the action taken, his right of appeal to the appropriate office of the Commission,

As previously set forth, the regulations of the Civil Service Commission prescribe two distinct procedures for the separation of probationary employees. One set of procedures is utilized when the separation is based upon deficiencies in conduct or performance after appointment and another set of procedures is used when the separation is based upon conditions that existed prior to appointment.

The proper line of demarcation in our judgment for employing one set of procedures instead of the other is where there is a question concerning the employee's performance on the job as opposed to, for instance, a proposed separation resulting from the falsification of application forms. The probationary period was designed to deal with performance and conduct deficiencies. Those employees who cannot properly shoulder the normal burdens of their position in this one-year period are ordinarily to be separated rather summa-

and the time limit within which such appeal must be submitted, as provided in § 22.304(c).

\* \* \* \* \*

"§ 22.304 Appeal rights to the Commission.

"(a) *Right of appeal.* An employee may appeal to the Commission from the agency's decision to suspend him. The appeal shall be in writing."

\* \* \* \* \*

4. (c) *Procedure for terminating a probationer.* (1) If an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstate his fitness or his qualifications for continued Federal employment, his services shall be terminated by notifying him in writing as to why he is being terminated and the effective date of the action. The information in the notice as to why he is being terminated must, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct. The employee shall have the right of appeal only under the circumstances provided in § 22.304(b) (2) of this chapter and must observe the time limit specified in that section.

\* \* \* \* \*

rily. Greenway v. United States, 163 Ct.Cl. 72, 75 (1963). On the other hand, situations which do not involve the performance or conduct of the employee after appointment, do not come within the purposes for which the probationary period was created, and the employees affected are treated as if their positions were permanent. We hold, therefore, that the plaintiff's physical defect which affected his performance was not a pre-appointment condition within the meaning of 5 C.F.R. § 2.301(c) (2), supra, and therefore, § 2.301(c) (1), supra, was applicable.

The provisions of the Federal Personnel Manual, infra, aid this construction.

Procedures Under Sections 22.302 and 2.301 of the CSC Regulations.

\* \* \* \* \* \*

SEPARATION PROPOSED FOR REASONS BASED TO ANY EXTENT ON CONDITIONS THAT EXISTED BEFORE APPOINTMENT— SECTIONS 2.301(C) (2) and 22.302.

\* \* \* \* \* \*

This procedure requires the agency to give the probationer substantially the same consideration he would have received from the Commission, as an applicant, if the derogatory information had come to light before he was appointed \* \* \*. Acceptable reasons under this section of the regulations may include intentional falsification of application Form 57 or other preappointment forms or documents. \* \* \*

We are of the opinion that the plaintiff was discharged because he failed "to demonstrate his fitness \* \* \* for continued Federal employment." To accept the plaintiff's theory which is essentially a tracing back of the cause of his failure "to demonstrate his fitness" to a physical "condition arising before his appointment" would possibly transform almost every separation of a probationer into a case involving a "condition arising before appointment."

It is a general rule of construction that the language of all our laws, rules and regulations must be read in the context of other laws pertaining to the same subject matter and should be interpreted in the manner which is most reasonable and logical in light of the aims and designs of the total body of law of which it is a part. E. g. Heydenfeldt v. Daney Gold & Silver Mining Co., 93 U.S. 634, 638, 23 L.Ed. 995 (1876). If the plaintiff's interpretation of section 2.301 (c) (2) is accepted, section 2.301(c) (1) would be almost nonfunctional for the reason that most employees could ground their inability to demonstrate fitness on some mental or physical condition which predated their employment.

It seems obvious that the more stringent procedures called for by section 2.301(c) (2) were not promulgated to apply to physical infirmities predating employment which affect the employee's performance. These safeguards as previously noted, were intended to be applicable where the separation of an employee was proposed for reasons other than performance deficiencies. As the plaintiff's condition is one affecting his on the job function, his situation is encompassed by section 2.301(c) (1). Further, as there is no real substance to the plaintiff's assertion that his separation was arbitrary and capricious, it is not an obstacle to the granting of the defendant's motion to dismiss. Cf. Greenway v. United States, supra at 82.

In summary, the regulations do not give the plaintiff the procedural rights that he claims entitlement to, and further, the undisputed facts reveal that the defendant complied with the applicable regulations.

For all of the above reasons, plaintiff's cross motion for summary judgment. is denied, defendant's motion to dismiss is granted, and plaintiff's petition is dismissed.