630 F.2d 622
 Travis N. BEESON, Plaintiff-Appellant,
v.
Henry E. HUDSON, Individually and as the former Director,
Veterans Administrative Regional Office, Little Rock,
Arkansas; Rufus Wilson, Individually and as former Chief of
the Department of Veterans Benefits, Washington, D. C.;
Donald Johnson, Individually and as the former
Administrator, Veterans Administration, Nationally,
Washington, D. C.; Fred B. Rhodes, Individually and as the
former Deputy Administrator, Veterans Administration,
Central Office, Washington, D. C.; Clark Mollenhoff,
Individually and as the former Counsel to the President of
the United States of America, Washington, D. C.; Richard L.
Roudebush, Individually and as the present Administrator,
Veterans Administration, Central Office, Washington, D. C.;
Roy R. Moore, Individually and as the Director, Veterans
Administration, Regional Office, Little Rock, Arkansas,
Defendant-Appellees.
 No. 79-2015.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1980.
Decided Sept. 17, 1980.
 
 Bobby E. Shepherd, Spencer, Spencer & Shepherd, El Dorado, Ark., for appellant.
 Neal B. Kirkpatrick, Asst. U. S. Atty., Fort Smith, Ark., argued. Larry R. McCord, U. S. Atty., Fort Smith, Ark., on brief, for appellee.
 Before LAY, Chief Judge, STEPHENSON, Circuit Judge, and HANSON,* Senior District Judge.
 HANSON, Senior District Judge.
 This appeal presents prematurely a constitutional question which, under the circumstances, we decline now to decide. We vacate the judgment of the district court and remand the case for further proceedings.
 The appellant, Travis N. Beeson, received a "career-conditional" appointment in August 1969, as staff assistant to the Regional Director of the Veterans Administration (VA) in Little Rock, Arkansas. Under the terms of this appointment, Beeson's first year of service was a probationary period, during which the VA had the right to terminate his employment should it determine either that his work performance or conduct failed to demonstrate his fitness or qualifications for continued employment, or that "conditions arising before his appointment" justified his termination. See generally 5 C.F.R. §§ 315.801-.07. The termination procedures required by the regulations are set out in the margin.[1] We invite attention to the fact that the required procedures differ significantly, depending on the reasons for the probationer's termination. Those terminated for "conditions arising before appointment" are entitled to significantly greater procedural protection than are those terminated for "unsatisfactory performance or conduct" during the probationary period. Compare, § 315.805 1 with § 315.804.1 Moreover, the former may appeal administratively on the ground that their termination was not effected in accordance with the procedural requirements of the regulations; the latter may not. See 315.806.1.
 In late January of 1970, officials of the VA in Washington learned that Beeson had been investigated by the FBI and would probably be indicted on criminal charges. The investigation concerned activities that Beeson had been engaged in prior to his appointment to the VA.[2] This information was relayed to the VA's Regional Director in Little Rock, who was told that he must give Beeson the option of either resigning or "facing the termination of his assignment." The Regional Director imposed this dilemma on Beeson on January 29, 1970. Beeson requested and was granted the rest of the day off to consider his options. He called an acquaintance of his on the White House staff, Niles Jackson (apparently a counsel to President Nixon), and explained his predicament. Jackson investigated the matter and then re-contacted Beeson, informing him that an indictment was indeed forthcoming and advising him to resign so that he would be eligible for back pay and reinstatement if he were acquitted of the charges.[3] On January 30, 1970, Beeson resigned. The VA never initiated § 315.805 termination proceedings against him; and, as far as the record discloses, Beeson never initiated or attempted to initiate § 315.806 appeal proceedings in connection with his separation from employment with the VA.
 An indictment was returned against Beeson in July of 1972, charging him with making false statements on loan applications submitted to the Federal Housing Administration in violation of 18 U.S.C. § 1010. He was subsequently tried and acquitted of these charges. Thereafter, he made repeated requests of the VA to reinstate him, but to no avail. He ultimately filed this action on January 29, 1976. The complaint is in three counts. Counts II and III purport to state causes of action against the defendants[4] under 42 U.S.C. §§ 1985 and 1986, respectively. Count I alleges a cause of action directly under the Fifth Amendment: Beeson claims that he had a property interest in his continued employment, and that his resignation was a "constructive discharge" that deprived him of this property interest without due process of law-without, in particular, the process due him under 5 C.F.R. § 315.805. He seeks compensatory and punitive damages against defendants in the total amount of $1,150,000.
 Following a year of discovery, defendants moved to dismiss Counts II and III of the complaint and for summary judgment on Count I. As to Counts II and III, defendants argued that Beeson had failed to state claims under 42 U.S.C. §§ 1985 and 1986 upon which relief could be granted, because he had alleged neither that defendants had acted under color of state law nor that he was a member of a "suspect class" who had been subjected to invidious discrimination. Beeson conceded these points in the district court; the court held that defendants were entitled to dismissal of Counts II and III for these reasons; and that ruling is not at issue in this appeal.
 As to Count I, the Fifth Amendment claim, defendants argued that they were entitled to summary judgment on three independent grounds: (1) that the undisputed facts establish that Beeson was not constructively discharged, but instead that he voluntarily resigned, and that he was therefore not deprived by them of any property interest or due process rights he may have had; (2) that the undisputed facts establish that defendants' actions were performed as part of their official functions, thus making them immune from any personal liability to Beeson;[5] and (3) that because of Beeson's status as a probationary employee he had no constitutionally protected property interest in his continued employment in any case. Defendants did not in their motion for summary judgment raise the question whether a discharged civil service employee may ever bring a damages action directly under the Fifth Amendment, or whether, if so, Beeson's action should be barred because of his apparent failure to exhaust his administrative remedies. The exhaustion issue had, however, been raised in defendants' answer to the complaint. We note that in the recent case of Bishop v. Tice, 622 F.2d 349, 354-58 (8th Cir. 1980) this Court has held that an improperly discharged civil service employee, who had a property interest in his continued employment, may recover damages for the deprivation of his property without due process of law directly under the Fifth Amendment, notwithstanding his failure to exhaust his administrative remedies, if he alleges and proves that the defendants, besides improperly terminating him, also blocked or interfered with his access to his administrative remedies.
 In ruling on the motion for summary judgment, the district court did not consider whether, under the circumstances of this case, Beeson's Fifth Amendment claim should be barred because of his apparent failure to exhaust his administrative remedies. Nor did the court determine whether or not defendants were entitled to summary judgment on the ground that Beeson voluntarily resigned his position with the VA. Nor, finally, did the court consider defendants' claim of immunity. Instead, without engaging in any analysis of the question, but simply citing Jenkins v. United States Post Office, 475 F.2d 1256 (9th Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973), and Donovan v. United States, 433 F.2d 522 (D.C.Cir.1970), cert. denied, 401 U.S. 944, 91 S.Ct. 955, 28 L.Ed.2d 225 (1971), the district court held that because of his status as a probationary employee, Beeson "simply has had no property . . . right in the employment which would support his cause of action. He has, therefore, not been deprived of such right by the actions of the defendants." Count I was accordingly dismissed along with Counts II and III. The sole question presented in this appeal is whether a probationary civil service employee is entitled, under the due process clause of the Fifth Amendment, to all the process due him under 5 C.F.R. § 315.805 before he is terminated for conditions arising before his employment. This question necessarily takes the following form: Whether the termination procedures mandated by § 315.805 raise a probationer's interest in his continued employment to the level of a property interest cognizable under the Fifth Amendment, at least to the extent of permitting in a proper case the recovery of damages under the Fifth Amendment for a discharge that should have been but was not processed in accordance with § 315.805.
 We are by no means certain that the district court correctly decided this constitutional question.[6] We recognize, of course, that a probationary civil service employee has in general only the weakest of "claims of entitlement" to his continued employment. The fact is that he can be dismissed at the virtually unreviewable discretion of his employing agency for unsatisfactory performance or conduct during the probationary period; it is, in general, only after he has achieved permanent status that he can be dismissed only for "such cause as will promote the efficiency of the service," upon proper notice and hearing.[7] On the other hand, we are impressed by the strength of the procedural protections afforded even a probationer if his agency proposes to terminate him for "conditions arising before appointment," and by the reason for these expanded procedural rights:
 The probationary period was designed to deal with performance and conduct deficiencies. Those employees who cannot properly shoulder the normal burdens of their position in this one-year period are ordinarily to be separated rather summarily. (Citation omitted.) On the other hand, situations which do not involve the performance or conduct of the employee after appointment, do not come within the purposes for which the probationary period was created, and the employees affected are treated as if their positions were permanent.
 Cohen v. United States, 384 F.2d 1001, 1003-04, 181 Ct.Cl. 400 (1967) (emphasis added). Upon analysis, it might be found that even a probationer has a vested property interest in his continued employment, to the extent of his legitimate expectation that he will not be terminated for conditions arising before his appointment absent a finding of something like "cause" therefor in a proceeding under 5 C.F.R. § 315.805.[8] Moreover, we do not see that the contrary proposition is supported by the cases relied on by the district court. The question of a probationer's property rights in his continued employment was simply not raised or considered in Donovan v. United States. Jenkins v. United States Post Office is closer to this case: there the plaintiff, an ex-probationer, claimed that her termination had deprived her of property without due process of law in violation of the Fifth Amendment. However, she was terminated under § 315.804, for unsatisfactory performance or conduct during the probationary period, rather than under § 315.805 for conditions arising before appointment. She was terminated in accordance with the procedures required by § 315.804; here Beeson claims that he was terminated without being accorded the procedures required by § 315.805. Finally, in Jenkins the discharged probationer claimed a property interest in her continued employment sufficiently strong to require more process prior to termination than was due her under the regulations; here Beeson claims rather that he was entitled to at least the process due him under the regulations. The holding in Jenkins that "(p)laintiff's status did not give rise to a property interest entitling her to a pre-dismissal hearing," 475 F.2d at 1257, is simply not addressed to the question presented in this case.
 We decline, however, to now decide whether or not the district court erred in holding that Beeson had no property interest in his continued employment. We hold instead that the district court erred in reaching out to decide this constitutional question before its decision was compelled. It is the established practice of the federal courts to avoid the decision of delicate constitutional questions if the case presenting them may be disposed of on alternative grounds. Califano v. Yamasaki, 442 U.S. 682, 61 L.Ed.2d 176 (1979); Bowen v. United States, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); Ashwander v. TVA, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). One reason for this practice, which is rooted in the constitutional role of the federal courts, is the reluctance of the courts to decide "abstract, hypothetical, or contingent" constitutional questions. Thorpe, supra, 393 U.S. at 284, 89 S.Ct. at 527. "(T)he district courts and courts of appeals should follow (this) practice." Bowen, supra, 422 U.S. at 920, 95 S.Ct. at 2573. By this settled canon of constitutional adjudication, the constitutional issue in this case should have been reached only if, after decision of two non-constitutional questions, decision was compelled. We therefore remand the case to the district court for the decision of these two questions. Cf. Clay v. Sun Insurance Co., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960). The district court should determine, after receiving further evidence if necessary, whether Beeson voluntarily resigned or was constructively discharged. If he was constructively discharged, the court should determine whether his access to his administrative remedies was blocked or interfered with by defendants in such a way as to permit this suit under the rule of Bishop v. Tice, supra. The district court is in a better position than we are to decide these mainly factual questions; and until they are decided, and decided favorably to Beeson, we can only regard his claim to a property interest in his continued employment as exactly the sort of "abstract, hypothetical, or contingent" constitutional question it is our policy not to decide. On remand the district court may reconsider if necessary Beeson's property interest claim, and the issue of defendants' claimed immunity from liability in this case.
 Vacated and remanded.
 
 
 
 *
 The Honorable WILLIAM C. HANSON, Senior District Judge, Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 § 315.804 Termination of probationers for unsatisfactory performance or conduct
 When an agency decides (emphasis added) to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.
 § 315.805 Termination of probationers for conditions arising before appointment.
 When an agency proposes (emphasis added) to terminate an employee serving a probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the employee is entitled to the following:
 (a) Notice of proposed adverse action. The employee is entitled to an advance written notice stating the reasons, specifically and in detail, for the proposed action.
 (b) Employee's answer. The employee is entitled to a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer. If the employee answers, the agency shall consider the answer in reaching its decision.
 (c) Notice of adverse decision. The employee is entitled to be notified of the agency's decision at the earliest practicable date. The agency shall deliver the decision to the employee at or before the time the action will be made effective. The notice shall be in writing, inform the employee of the reasons for the action, inform the employee of his right of appeal to the appropriate office of the (Civil Service) Commission, and inform him of the time limit within which the appeal must be submitted as provided in § 315.806(d).
 § 315.806 Appeal rights to the Commission.
 (a) Right of appeal. An employee may appeal to the Commission in writing an agency's decision to terminate him under § 315.804 or § 315.805 only as provided in paragraphs (b) and (c) of this section. The Commission's review is confined to the issues stated in paragraphs (b) and (c) of this section.
 (b) On discrimination. * * *
 (c) On improper procedure. A probationer whose termination is subject to § 315.805 may appeal on the ground that his termination was not effected in accordance with the procedural requirements of that section.
 (d) Time limits. An employee may submit an appeal at any time after receipt of the notice of adverse decision, but not later than 15 calender days after the termination has been effective. The Commission may extend the time limit in this paragraph when the appellant shows that he was not notified of the time limit and was not otherwise aware of it, or that he was prevented by circumstances beyond his control from appealing within the time limit.
 (e) Finality of the decision. The decision of the office of the Commission having appellate jurisdiction is final. However, either party to the appeal may petition the Appeals Review Board to reopen and reconsider the decision under § 772.310 of this chapter.
 
 
 [2]
 We reject appellees' contention that Beeson's termination, if any, was other than for "conditions arising before appointment."
 
 
 [3]
 We are not informed of the basis for this advice, or of its accuracy
 
 
 [4]
 All the defendants except Clark Mollenhoff are or were high officials in the VA. It is not clear from the record what connection Mollenhoff is thought to have with the events at issue in this case
 
 
 [5]
 Defendants' motion for summary judgment and memorandum in support thereof were filed before the Supreme Court decided Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), holding that in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to a qualified immunity except in certain special cases
 
 
 [6]
 "Whether protected entitlements exist and how far they extend, although dependent on subconstitutional rules, see e. g., Bishop v. Wood (426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)), are ultimately questions of constitutional law. See Memphis Light, Gas & Water v. Craft, 436 U.S. (1 (1978)) at 9, 98 S.Ct. 1554, at 1560, 56 L.Ed.2d 30, Monaghan, Of 'Liberty' and 'Property,' 62 Cornell L.Rev. 405, 435-36 (1977)." O'Bannon v. Town Court Nursing Center, --- U.S. ---, ---, 100 S.Ct. 2467, 2481, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring)
 
 
 [7]
 See 5 U.S.C. § 7501, et seq. and 5 C.F.R. 752.101, et seq. for provisions governing termination of permanent employees
 
 
 [8]
 See, e. g., Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (regulations specifying termination procedures are binding on agencies operating under them); O'Bannon v. Town Court Nursing Center, --- U.S. ---, ---, 100 S.Ct. 2467, 2480, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring) (where a substantial restriction inhibits governmental removal of a presently enjoyed benefit, a property interest will normally be recognized, although the term "property" sometimes incorporates limiting characterizations of statutorily bestowed interests) (reviewing cases)