Glenn **HARRINGTON**, Plaintiff, Appellee,

v.

**UNITED STATES of America, et al.,** Defendants, Appellees,

**Stephen R. Walsh, Jr.,** Plaintiff, Appellant.

No. 81-1157.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1981.

Decided March 2, 1982.

James B. Krasnoo, Boston, Mass., with whom Norris, Kozodoy & Krasnoo, Boston, Mass., was on brief, for plaintiff, appellant.

Susan Herdina, Appellate Staff, Civil Division, Dept. of Justice, Washington, D. C., with whom Paul F. Murray, U. S. Atty.,

Providence, R. I., Stuart E. Schiffer, Acting Asst. Atty. Gen., and Robert S. Greenspan, Appellate Staff, Civil Division, Dept. of Justice, Washington, D. C., were on brief, for defendants, appellees.

Before CAMPBELL and BREYER, Circuit Judges, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

Stephen R. Walsh, Jr., formerly a probationary Deputy United States Marshal, appeals from the district court's dismissal of his complaint against the United States, the Director of the United States Marshals Service, and several of his official subordinates. The plaintiff claims that in terminating him as a probationary employee the defendants violated applicable administrative regulations and, in violation of the Fifth Amendment to the Constitution, deprived him of due process of law and equal protection.

On May 23, 1980 the plaintiff filed a complaint which had allegations to the following effect. On January 28, 1980 the United States Marshals Service, Department of Justice, hired the plaintiff in Rhode Island as a probationary employee. As a condition of his employment, the plaintiff was to complete satisfactorily both basic training and his one-year probationary period. On February 4 the plaintiff was temporarily assigned to a basic training center at Glynco, Georgia. While there, on April 19, he with other trainees while off duty but on base "was involved in an incident of frivolity and horseplay." The incident became known to the defendants. Thereafter "an investigation was pursued." The defendants forbade the plaintiff to complete his training period and on April 20 ordered him to return to Rhode Island. On May 5, 1980 the plaintiff was notified that he was to be terminated on May 23, 1980.

The complaint attaches and incorporates the May 5 notice. It is in the form of a letter dated May 5, 1980 from one of the present defendants, Frank Sidella, Chief of

the Employee Development Division of the United States Marshals Service, to the plaintiff, and states that "By this memorandum I am separating you from your position as a Deputy U. S. Marshal during your probationary period . . . for misconduct off duty while at the Federal Law Enforcement Training Center in Glynco, Georgia . . . effective . . . May 23, 1980." The letter added that the plaintiff had a right to an administrative appeal if he felt that the decision is based on discrimination because of race or color or on other specific grounds not here relevant. The letter concluded that "If you have any questions concerning the reason for your termination, your appeal rights, the procedures to be used in filing an appeal, or any other aspects of this matter, you may contact Juanita Cunningham."

Alleging that the notification of termination violated his rights under regulations governing termination procedures and under the due process and equal protection clauses of the Fifth Amendment to the Constitution, the plaintiff sought declaratory and injunctive relief.

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim, and failure to exhaust administrative remedies and also moved for summary judgment. The district court granted the motion to dismiss. We affirm on the ground that the plaintiff has failed to state a cause of action.

We first address the defendants' alleged denial of the plaintiff's rights under the only administrative regulation alleged to be applicable to termination of a probationary employee for misconduct occurring after entrance on duty. 5 C.F.R. 315.804. That regulation provides: "When an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it

shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the Agency's conclusions as to the inadequacies of his performance or conduct."

The Federal Personnel Manual ("FPM") c. 315, subch. 3–4(a)(3), uses virtually the same language but adds "it [the notice] need not require complete and specific reasons as with career or career-conditioned employees who have completed their probationary periods and have competitive status."

The plaintiff's argument that the defendants failed to comply with their own regulation suggests that the defects were (1) that the May 5 letter does not tell the plaintiff why he was being separated inasmuch as he was given no detailed statement of the alleged conduct in which he participated and (2) that an investigative record upon which the May 5 letter was based does not include any evidence that the plaintiff participated in either destruction of property or assaultive behavior upon a fellow trainee.

■ As to the first branch of that argument, our standard is set by the following words of the regulation: "The information and the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." When the plaintiff was informed on May 5 that his "misconduct off duty while at the Federal Law Enforcement Center," he was given a general conclusion as to the inadequacy of his conduct, but he was not then supplied with particulars as to the type of his misconduct or the date of that misconduct. However, such specifications, even if we assume that they would ordinarily be required, were not necessary in this particular instance in light of what, according to the complaint itself,[1] the plaintiff

---

1. Inasmuch as the district court dismissed the complaint and seems not to have granted the defendants' motion for summary judgment, we have not in our opinion relied upon the uncontradicted evidence which convincingly proves that the plaintiff has always known that he was terminated on account of his off-duty "horse-play" on April 19, 1980 in participating in a

already knew. The complaint declares that on April 19 he with others had been involved "in an incident of frivolity and horseplay," that this was known to the defendants and led to an investigation, and that the next day the defendants terminated his training and ordered him back to Rhode Island. It cannot properly be claimed that the written notice of May 5 failed to inform him, in light of his previous knowledge, that he was being terminated for participation in an April 19, 1980 conspiracy to inflict on that day injury upon a fellow trainee, even though the complaint characterizes it as "horseplay." Further detail was not required in order to meet the standard of notice permitted by the regulation. *Medoff v. Freeman*, 362 F.2d 472, 474 (1st Cir. 1966). *See Jenkins v. U. S. Post Office*, 475 F.2d 1256, 1257 (9th Cir.), *cert. den.*, 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973).

█ The second branch of the plaintiff's argument is not based on an alleged failure of the defendants to follow procedures stipulated in any regulation or statute. 5 C.F.R. 315.804 does not require that in the situation at bar the defendants should act only upon the basis of substantial evidence or that the defendants before issuing a notice of termination should give the probationary employee an opportunity to be heard. It is not claimed that with respect to a probationary employee dismissed for misconduct during the probationary period any other regulation or statute purports to impose such a requirement upon the defendants. And indeed it is well settled that

there is no such requirement with respect to the termination of the government's employment of a probationary employee on account of his misconduct during his probationary period. *Sampson v. Murray*, 415 U.S. 61, 80–83, 94 S.Ct. 937, 948–949, 39 L.Ed.2d 166 (1974); *Medoff v. Freeman, supra*, 474–5. Nor is there any basis on which a probationary employee can assert a property interest in his continued employment that would create a due process right to a hearing. *See generally Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Cafeteria and Restaurant Workers, etc. v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961); *Medoff v. Freeman, supra*, 475–76.

The plaintiff's next set of arguments relates to his claim that he has been deprived of the equal protection of the laws guaranteed to him by the Fifth Amendment.

The plaintiff first contends that he has been denied equal protection of the laws because he, a probationary employee charged with misconduct which occurred *after* his employment began, was not accorded the same procedure as, under 5 C.F.R. § 315.805, would have been provided for a probationary employee charged with misconduct which occurred *before* his employment. The Constitution does not require equal treatment of situations which are manifestly different.[2]

█ The plaintiff's next contention is that he was denied equal protection inasmuch as he has been more severely dealt

conspiracy to harass a black probationary United States Deputy Marshal named Jones. We refer to (1) the plaintiff's May 14, 1980 request for, and June 25, 1980 receipt of, the report of the investigation which the complaint mentions; (2) his request to William E. Hall, Director of the United States Marshals Service, to reconsider the May 5 termination notice; (3) Hall's granting of that request and Hall's May 19 interview of the plaintiff—an interview which led Walsh on May 21, 1980 to thank Hall for his "open-mindedness and fairness"; and (4) Hall's reconsideration of the May 5 notice and his May 23 decision to let the termination decision stand.

2. *Cf. Cohen v. United States*, 384 F.2d 1001, 1003–4, 181 Ct.Cl. 400 (1967):

..... The probationary period was designed to deal with performance and conduct deficiencies. Those employees who cannot properly shoulder the normal burdens of their position in this one-year period are ordinarily to be separated rather summarily. (*Greenway v. United States*, 163 Ct.Cl. 72, 75 (1963).) On the other hand, situations which do not involve the performance or conduct of the employee after appointment, do not come within the purposes for which the probationary period was created, and the employees affected are treated as if their positions were permanent .....

with than others similarly charged. Absent any allegation of a discriminatory purpose, a mere failure of those who administer the law to treat equally all persons who violate the law does not constitute a denial of the constitutional right to equal protection. *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *cf. Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 187, 188, 93 S.Ct. 1455, 1458–1459, 36 L.Ed.2d 142 (1973).

The plaintiff's next set of arguments is to the effect that the words in the May 5 letter from Chief Sidella to him stigmatize and defame him, that they were not conclusions reached after he had notice and opportunity to be heard, and that, therefore, they deprive him of his "liberty" guaranteed by the Fifth Amendment. A short and adequate answer to that set of arguments is that the words to which the plaintiff refers appeared in a communication addressed by one of the defendants to the plaintiff personally; so far as is disclosed by the complaint,[3] none of the defendants has undertaken to make public those words. When a public official having authority to dismiss the plaintiff makes a statement to him and only him of the reason for dismissing him, even if that statement stigmatizes the plaintiff, the statement does not deprive the plaintiff of any constitutionally protected liberty. *Beitzell v. Jeffrey*, 643 F.2d 870, 878–879 (1st Cir. 1981).[4]

The plaintiff not having stated any cause of action against the defendants, there is no occasion for us to consider the question as to whether he had a right to bring an action for mandamus, and whether he purported to do so.

*Affirmed.*

3. The complaint does not even allege that the defendants deprived the plaintiff of his liberty by stigmatizing him.

4. Indeed, since the defendants are not alleged to have published the allegedly defamatory

statement to anyone other than the plaintiff who was the subject of the statement, the defendants could not be held liable even for a tort. *Restatement (Second) of Torts,* §§ 558(b), 577.