991 F.2d 811
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Darrell L. MUELLER, Petitioner,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent.
 No. 90-3467.
 United States Court of Appeals, Federal Circuit.
 March 24, 1993.
 
 Before RICH, PAULINE NEWMAN and ARCHER, Circuit Judges.
 ARCHER, Circuit Judge.
 
 
 1
 Darrell Mueller appeals the initial decision of the Administrative Judge (AJ), which became the final decision of the Merit Systems Protection Board (board), No. SE315H9010195 (July 19, 1990) dismissing for lack of jurisdiction his claim that his employment was improperly terminated by the United States Air Force. We reverse and remand.
 
 I.
 
 2
 Mueller was a civilian employee for twenty-two years with the Air Force, during which he worked with computerized flight simulators. Mueller was employed at Cannon Air Force Base (Cannon), New Mexico, on January 17, 1988, in the position of Equipment Specialist (Electronics), GS-1670-9. Although his duties did not change, Mueller's position was reclassified in November 1988, pursuant to an Air Force directive, to Maintenance Contract Monitor, GS-1601-9 (MCM).
 
 
 3
 In late 1988, Mueller applied and was accepted for a transfer to Mountain Home Air Force Base, Idaho (Mountain Home), effective January 23, 1989. He was selected from a competitive register for the position of Equipment Specialist (Electronics), GS-1670-9, the same job title he originally held at Cannon.
 
 
 4
 On January 19, 1990, Mueller's employment was terminated by the Air Force and he timely appealed to the board. The AJ held that the board did not have jurisdiction because Mueller was a probationary employee and had not completed one year of employment at Mountain Home at the time of his release. In reaching his decision, the AJ also determined that Mueller's job at Cannon was not in the "same line of work" as his job at Mountain Home and, therefore, could not be added or "tacked" to the Mountain Home job for purposes of satisfying the one year probationary period.
 
 II.
 
 5
 The first year of employment following a competitive appointment from a register is a probationary period. 5 C.F.R. § 315.801(a)(1) (1990). As a general rule, the board does not have jurisdiction over the separation of an employee during the probationary period. 5 C.F.R. § 315.806. The Office of Personnel Management (OPM), however, has set out conditions under which prior employment may be counted in determining whether the probationary period has been completed. See 5 C.F.R. § 315.802(b). The prior service must be (1) rendered immediately preceding the appointment, (2) in the same agency, (3) with no more than one thirty day break in service, and (4) in the same line of work. Federal Personnel Manual, Chapter 315, Appendix A, A-3, c(1)(a)-(c). The parties agree that Mueller's employment at Cannon satisfies the first three requirements. Thus, we need only consider the issue of whether Mueller's position at Cannon was in the same line of work as his position at Mountain Home.
 
 
 6
 The OPM has explained that "[s]ame line of work means the positions in which the duties performed are similar in nature and character and require substantially the same or similar qualifications, so that the incumbent could be interchanged between the positions without significant training or undue interruption to work." Federal Personnel Manual, Chapter 315, Appendix A, A-3, c(3).
 
 
 7
 In Mathis v. United States Postal Serv., 865 F.2d 232 (Fed.Cir.1988), this court in considering a comparable statutory phrase in 5 U.S.C. § 7511(a)(1)(B), relied on Court of Claims and MSPB decisions construing "same line of work" for purposes of satisfying a probationary period. This court interpreted the phrase to require that the employee "occupy positions that involve related or comparable work that requires the same or similar skills." Mathis, 865 F.2d at 234.
 
 
 8
 Under these definitions, "same line of work" does not mean that identical skills are necessary to both positions, or that the work in both positions be exactly the same, or that the employee must have the ability to perform in the new job without any training. Mathis, 865 F.2d at 235; see also Van Skiner v. United States Postal Serv., 7 MSPR 18, 20 (1981). The proper evaluation of whether an employee is in the same line of work after a change in jobs focuses on the employee's actual duties in the two positions and the actual skills required in the two positions. Mathis, 865 F.2d at 235; see also Horne v. United States, 419 F.2d 416, 419 (Ct.Cl.1969); Dargo v. United States, 176 Ct.Cl. 1193, 1203 (1966) ("the nature of the work plaintiff actually performed [in his prior position] was ... compared with the work plaintiff was required to perform [in his new position]").
 
 III.
 
 9
 In this case the AJ acknowledged that "[i]t is likely that, despite standard Air Force-wide position descriptions, the simulator program at Cannon AFB was organized somewhat differently than at Mountain Home." (Emphasis in original.) In spite of testimony that Mueller's actual duties at Cannon were greater than his job description indicated, the AJ nevertheless placed great emphasis on the official job descriptions. The AJ stated:
 
 
 10
 My conclusion, after examining the respective position descriptions, is that appellant's duties at Cannon AFB were primarily quality assurance and evaluation of contractor performance whereas his duties as an Equipment Specialist (Electronics) at Mountain Home were primarily providing technical expertise in the development, acquisition and modification of ATDs.
 
 
 11
 (Emphasis added.)
 
 
 12
 We are convinced that the AJ placed too much reliance on the position descriptions instead of actual work performed. In directing the change of Mueller's position at Cannon from Equipment Specialist (Electronics) to MCM, the Air Force recognized that the MCM position required more technical expertise than is generally required for a quality assurance and contract monitoring position. In fact the Air Force indicated that an MCM could involve technical skills and duties reflective of the Equipment Specialist series, although this was not a "paramount requirement." The AJ acknowledged that Mueller had been "encouraged and/or required" by his supervisor at Cannon to have and use such technical expertise in his job at Cannon. The AJ's conclusion as to Mueller's work at Cannon, however, reflected primarily the "quality assurance" duties of Mueller's MCM position description.
 
 
 13
 As to Mueller's duties at Mountain Home, the AJ appears to have overstated the requirements of the GS-9 Equipment Specialist (Electronics) position. That position description merely requires the incumbent to be an "intermediate level employee," who is able to provide "technical support " and "limited support " in Development, Test and Evaluation and Operational Tests and Evaluation.
 
 
 14
 As a result of emphasizing position descriptions, the AJ has construed Mueller's MCM position at Cannon to be equivalent to a general Quality Assurance Representative (QAR) classification, admittedly a somewhat lower level status than the MCM job to which Mueller was reclassified at Cannon, while at the same time treating his GS-9 position at Mountain Home as being comparable to the next higher GS-11 position which requires technical expertise rather than technical support.
 
 
 15
 When comparing Mueller's previous job with his new one, the AJ stated that he also considered Mueller's performance appraisal plans at both Cannon and Mountain Home. He did not discuss, however, whether the Cannon plan was reflective of Mueller's actual duties. Mueller's supervisor at Cannon, Robert McCullough, who signed his performance plan, testified that Mueller's actual duties at Cannon were more extensive than required by the performance plan. Thus, while Mueller's performance plan may be consistent with his position description at Cannon, as the AJ found, the unrefuted testimony shows that it does not reflect the totality of Mueller's actual duties.
 
 
 16
 Finally, the AJ considered the testimonial evidence regarding Mueller's past and present positions. Mueller testified that the two positions were similar. The AJ stated that "[Mueller] saw himself serving the same function at both duty locations, i.e., a 'technical advisor for the Air Force overseeing the contractor and the overall maintenance and operation of the device.' " McCullough testified that Mueller's position at Cannon was "interchangeable" with the equipment specialist position that Mueller assumed at Mountain Home. The AJ rejected their testimony, not because it was not credible, but because he considered it to be "too general."
 
 
 17
 The AJ instead accepted the testimony of the government's witnesses Peter Daly, Project Officer for Quality Assurance at Mountain Home, and Thaine Hepler, Mueller's supervisor at Mountain Home. While Daly testified as to the general responsibilities of a QAR in the Air Force, he did not know what Mueller's specific responsibilities had been at Cannon, as a MCM and before that as an Equipment Specialist (Electronics). Hepler described the difference between Mueller's duties at Mountain Home and those of a QAR, but his testimony was based on the duties of a QAR at Mountain Home. Neither Hepler nor Daly had any knowledge of Mueller's actual duties while working at Cannon.
 
 
 18
 The probative value of the testimony of Daly and Hepler on the fundamental question of the scope of Mueller's actual work at Cannon is minimal compared with that of Mueller and McCullough. Only the latter had actual knowledge. Daly and Hepler could only interpolate, based on their knowledge as to the QAR position at Mountain Home, that Mueller's actual duties at Cannon had been similar. In considering McCullough's and Mueller's testimony, the AJ stated "I perceived no intent to deceive, only honestly held perceptions." Thus, there is no question of their credibility and there is no direct and probative evidence in conflict with their testimony as to Mueller's actual duties at Cannon.
 
 IV.
 
 19
 For the foregoing reasons, we conclude that the AJ erroneously held that Mueller's actual duties at Cannon were not in the same line of work as his duties at Mountain Home. We therefore reverse the board's decision dismissing for lack of jurisdiction and remand the case for proceedings consistent with this opinion.